ACCEPTED
03-15-00259-CV
6282836
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/29/2015 5:39:39 PM
JEFFREY D. KYLE
CLERK

## NO. 03-15-00259-CV

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/29/2015 5:39:39 PM
JEFFREY D. KYLE
Clerk

BECKY, LTD.,
Appellant

v.

THE CITY OF CEDAR PARK, STEPHEN THOMAS, MATT POWELL, MITCH
FULLER, LYLE GRIMES, LOWELL MOORE, JON LUX, AND DON TRACY,
Appellees.

ON APPEAL FROM THE 126TH JUDICIAL
DISTRICT COURT OF TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-14-001293

## APPELLEES' BRIEF

BICKERSTAFF HEATH
DELGADO ACOSTA LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, TX 78746
(512) 472-8021
(512) 320-5638 FACSIMILE

COBBY A. CAPUTO
State Bar No. 03784650
*ccaputo@bickerstaff.com*

BRADLEY B. YOUNG
State Bar No. 24028245
*byoung@bickerstaff.com*

ATTORNEYS FOR APPELLEES

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

The parties and counsel are correctly identified in the Initial Brief of Appellant Becky, Ltd.

## RECORD REFERENCES

The Clerk's Record filed with the Third Court of Appeals on May 6, 2015 will be cited as "CR __," where the blank refers to the District Clerk's consecutive page numbering.

Appellees' Appendix will be cited as "Appendix." Appellant's Appendix will be cited as "Appellant's Appendix."

## DESIGNATION OF PARTIES

The parties shall be referred to as follows: (i) "Appellant" or "Becky" refers to Appellant Becky Ltd.; and (ii) "Appellees" or "the city" refers collectively to Appellees the City of Cedar Park, Stephen Thomas, Matt Powell, Mitch Fuller, Lyle Grimes, Lowell Moore, Jon Lux, and Don Tracy. "Milestone" refers to Milestone Community Builders, LLC, a party to the proceeding below prior to severance.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..........................................................................i

RECORD REFERENCES ...............................................................................................i

DESIGNATION OF PARTIES .........................................................................................i

TABLE OF CONTENTS.................................................................................................. ii

INDEX OF AUTHORITIES............................................................................................iv

STATEMENT OF THE CASE..........................................................................................2

STATEMENT REGARDING ORAL ARGUMENT ..............................................................2

ISSUES PRESENTED.....................................................................................................3

STATEMENT OF FACTS ................................................................................................4

SUMMARY OF THE ARGUMENT ...................................................................................7

ARGUMENT AND AUTHORITIES..................................................................................8

    I.     Neither the facts that Becky has alleged nor the
          jurisdictional evidence support subject-matter
          jurisdiction over Becky's claims. [Appellant's Br. at 6-11] .................8

    II.    Both the city and the city council members acting
          in their official capacities are entitled to
          governmental immunity ....................................................................10

          A.    Becky has not implicated the *ultra vires* exception to
                immunity because the City Council's decision to
                contract with Milestone was a discretionary act.
                [Appellant's Br. at 12-17]...........................................................10

B. The UDJA does not waive a city's governmental immunity from a suit to declare rights under an ordinance. [Appellant's Br. at 17-19] ......................................17

III. Becky lacks standing because it was not a party to the Agreement. [Appellant's Br. at 19-23] ....................................19

IV. Becky's claims were not ripe because it never submitted a completed plat application to the city for review. [Appellant's Br. at 24-25] ......................................24

V. Becky's claims are moot. [Appellant's Br. at 25-28] ........................27

PRAYER ....................................................................................................27

CERTIFICATE OF SERVICE ..................................................................29

CERTIFICATE OF COMPLIANCE ..........................................................30

APPENDIX ...............................................................................................31

iii

**Page(s)**

**Cases**

*Bd. of Adjustment of the City of San Antonio v. Wende*,
    92 S.W.3d 424 (Tex. 2002) .................................................................14

*Brunson v. Woolsey*,
    63 S.W.3d 583 (Tex. App.-Fort Worth 2001, no pet.) .......................19

*Cadle Co. v. Lobingier*,
    50 S.W.3d 662 (Tex. App.-Fort Worth 2001, pet. denied) ................19

*Catalina Dev., Inc. v. County of El Paso*,
    121 S.W.3d 704 (Tex.2003) ...............................................................11

*City of Corinth v. NuRock Dev., Inc.*,
    293 S.W.3d 360 (Tex. App. – Fort Worth 2009, no pet.) ..................26

*City of Dallas v. Texas EZPAWN, L.P.*,
    No. 05-12-01269-CV, 2013 WL 1320513 (Tex. App. – Dallas Apr.
    1, 2013, no pet.) (mem. op.) ........................................................17, 18

*City of El Paso v. Heinrich*,
    284 S.W.3d 366 (Tex. 2009) ........................................................11, 16

*City of El Paso v. Maddox*,
    276 S.W.3d 66 (Tex. App. – El Paso 2008, pet. denied) ..............25, 26

*City of Laredo v. Rio Grande H2O Guardian*,
    No. 04-10-00872-CV, 2011 WL 3122205 (Tex. App. – San
    Antonio Jul. 27, 2011, no pet.) ....................................................23, 24

*City of New Braunfels v. Tovar*,
    No. 03-14-00693-CV, 2015 WL 2183479 (Tex. App. – Austin
    May 7, 2015, no pet. h.) .....................................................................15

*Coble v. City of Mansfield*,
    134 S.W.3d 449 (Tex. App. – Fort Worth 2004, no pet.) ..................26

*Cokins v. City of Lakeway*,
No. 03-12-00083-CV, 2013 WL 4007522 (Tex. App. – Austin July
25, 2013, no pet.) (mem. op.) ............................................................10

*Creedmoor-Maha Water Supply Corp. v. Tex. Com'n on Envtl.
Quality*,
307 S.W.3d 505 (Tex. App. – Austin 2010, no pet.).........................16

*DeSoto Wildwood Dev., Inc. v. City of Lewisville*,
184 S.W.3d 814 (Tex. App. – Fort Worth 2006, no pet.)..................14

*Exxon Corp. v. Pluff*,
94 S.W.3d 22 (Tex.App.-Tyler 2002, pet. denied) ...........................19

*Heckman v. Williamson County*,
369 S.W.3d 137 (Tex. 2012) .............................................................20

*Lone Star College Sys. v. Immigration Reform Coalition of Texas
(IRCOT)*,
418 S.W.3d 263 (Tex. App.-Houston [14th Dist.] 2013,
pet denied)..........................................................................................18

*Nobles v. Marcus*,
533 S.W.2d 923 (Tex.1976).............................................................20

*Nootsie Ltd. v. Williamson County Appraisal Dist.*,
925 S.W.2d 659 (Tex.1996)..............................................................19

*Robinson v. Parker*,
353 S.W.3d 753 (Tex. 2011) .............................................................26

*Saifi v. City of Texas City*,
No. 14-13-00815-CV, 2015 WL 1843540 (Tex. App. – Houston
[14th Dist.] Apr. 23, 2015, no pet.) (mem. op.).............................18, 19

*Save Our Springs Alliance, Inc. [SOS] v. City of Austin*,
149 S.W.3d 674 (Tex. App. – Austin 2004, no pet.)..............3, 21, 27

*Save Our Springs Alliance, Inc. [SOS] v. City of Dripping Springs*,
304 S.W.3d 871 (Tex. App. – Austin 2010, pet. denied) ............20, 24

*Schechter v. Wildwood Developers, LLC*,
214 S.W.3d 117 (Tex. App. – El Paso 2006, no pet.) ......................21

*Stop the Ordinances Please v. City of New Braunfels*,
   306 S.W.3d 919 (Tex. App. – Austin 2010, no pet.)....................................21, 22

*Sw. Bell Tel., L.P. v. Emmett*,
   459 S.W.3d 578 (Tex. 2015) .......................................................13, 14, 15

*Texas Dep't of Parks & Wildlife v. Miranda*,
   133 S.W.3d 217 (Tex. 2004) .........................................................9, 10

*Texas Dept. of Transp. v. Sefzik*,
   355 S.W.3d 618 (Tex. 2011) .......................................................17, 19

*Texas Logos, LP v. TxDOT*,
   241 S.W. 3d 105 (Tex. App. – Austin 2007, no pet.)............................10, 11, 16

*Texas Lottery Com'n v. First State Bank of DeQueen*,
   325 S.W.3d 628 (Tex. 2010) ...........................................................17

*VanderWerff v. Tex. Bd. of Chiropractic Examiners*,
   No. 03-12-00711-CV, 2014 WL 7466814 (Tex. App. – Austin
   Dec. 18, 2014, no pet.) (mem. op.) ....................................................19

*Waco Indep. Sch. Dist. v. Gibson*,
   22 S.W.3d 849 (Tex. 2000)..............................................................25

*Williams v. Texas Tech Univ. Health Sciences Ctr.*,
   No. 10-15-00005-CV, 2015 WL 2452513 (Tex. App. – Waco May
   21, 2015, no pet. h.) (mem. op.) .....................................................19

**Statutes**

TEX. GOV'T CODE § 311.016(1) (Code Construction Act) ....................................14

TEX. LOC. GOV'T CODE § 212.009(a).........................................................6

Chapter 212 of the Texas Local Government Code ..................................................8

**Miscellaneous**

City of Cedar Park Code of Ordinances, § 16.02.005 ....................................9, 13, 14

NO. 03-15-00259-CV

_____

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN

_____

BECKY, LTD.,
Appellant
v.
THE CITY OF CEDAR PARK, STEPHEN THOMAS, MATT POWELL, MITCH
FULLER, LYLE GRIMES, LOWELL MOORE, JON LUX, AND DON TRACY,
Appellees.

_____

ON APPEAL FROM THE 126TH JUDICIAL
DISTRICT COURT OF TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. D-1-GN-14-001293

_____

**APPELLEES' BRIEF**

_____

TO THE HONORABLE COURT OF APPEALS:

COME NOW Appellees, the City of Cedar Park, Stephen Thomas, Matt Powell, Mitch Fuller, Lyle Grimes, Lowell Moore, Jon Lux, and Don Tracy, and respectfully file this Appellees' Brief pursuant to Texas Rule of Appellate Procedure 38.2 and would show the Court the following:

1

## STATEMENT OF THE CASE

Appellees disagree with Appellant's characterization of the nature of the case. A more accurate statement of the nature of the case is:

*Nature of the Case:* This is a suit by Becky under the Uniform Declaratory Judgment Act (UDJA) to challenge the terms of a development agreement between the city and Milestone.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees concur in Becky's request for oral argument.

# ISSUES PRESENTED

1.  Do Becky's claims based on the City Council's discretionary decision to contract with Milestone fall within the *ultra vires* exception to governmental immunity? [Appellant's Issue No. 1]

2.  Does the Uniform Declaratory Judgment Act (UDJA) waive the city's governmental immunity from a suit that does not seek to invalidate a city ordinance but merely seeks a declaration of rights under the ordinance? [Appellant's Issue No. 2]

3.  Does Becky have standing to challenge a contract to which it is not a party and that relates to property that Becky does not own? [Appellant's Issue No. 3]

4.  Are Becky's speculative claims that it will have to bear the cost of the extension of Old Mill Road ripe for adjudication, even though the city has not required Becky to pay for the extension of the road, and Becky has not submitted sufficient information for the city to determine the extent to which Becky's participation in road construction may be necessary? [Appellant's Issue No. 4]

5.  Are Becky's claims moot under *Save Our Springs Alliance, Inc. [SOS] v. City of Austin*, 149 S.W.3d 674 (Tex. App. – Austin 2004, no pet.)? [Appellant's Issue No. 5]

This case is about a future road to a vacant lot. Becky owns a vacant tract of property in the city (the "Becky tract").[1] Becky wants the city to build a road to the Becky tract so that Becky can obtain a more favorable price when it sells the property to a developer. Milestone owns a piece of property adjacent to the Becky tract that recently went through the city's platting process.[2]

Becky contends that the city should have required Milestone to construct a road called Old Mill Road all the way from Lakeline Boulevard to the Becky tract.[3] Instead, the city, acting through its City Council,[4] entered into a Unified Development Agreement (Agreement) with Milestone through which Milestone agreed to the following: (1) Milestone agreed to dedicate to the city sufficient right-of-way to extend Old Mill Road from its current terminus at South Lakeline Boulevard to the edge of Milestone's property where it abuts the Becky tract; and (2) Milestone agreed to construct a portion of the Old Mill Road Extension (the Phase 1 Extension) sufficient to serve the proposed development on Milestone's

---

[1] CR 53-54 (Affidavit of Sam P. Roberts, Assistant City Manager [Roberts Aff.]), at ¶ 8.

[2] *Id*. at ¶¶ 3, 5.

[3] *See* CR 22 / Appendix A (Unified Development Agreement), at Exhibit C, for a map of the property that shows the relative locations of Lakeline Boulevard and Phases 1 and 2 of the Old Mill Road extension.

[4] Stephen Thomas, Matt Powell, Mitch Fuller, Lyle Grimes, Lowell Moore, Jon Lux, and Don Tracy were the members of the City Council at the time that the city entered into the Agreement. Becky has sued them in their official capacities as city council members.

property.[5]  Although the city required Milestone to dedicate sufficient right-of-way to meet the city's possible future needs, the city did not require Milestone to construct Phase II of Old Mill Road, which would extend the road all the way to the unplatted, landlocked Becky tract.[6]

When the city initially filed its plea to the jurisdiction, Becky had not submitted an application to develop the Becky tract.  After the city filed its plea, however (and presumably in response to the city's ripeness arguments), Becky did file a set of development materials.  The following timeline summarizes the events that ensued:[7]

| | |
|---|---|
| **October 24, 2014:** | City receives Becky's preliminary plan application and final plat application. |
| **November 7, 2014:** | City staff provides comments to Becky's engineer. |
| **November 11, 2014:** | City receives follow-up email from Becky's engineer. |
| **November 17, 2014:** | City staff responds to engineer's email. |
| **November 18, 2014**: | Planning and Zoning Commission statutorily disapproves preliminary plan application and final plat application without bias against future consideration, providing |

---

[5] CR 53-54 [Roberts Aff.], at ¶ 5.

[6] *Id*. at ¶ 6; *see also* CR 9-23 / Appendix A (Unified Development Agreement).

[7] CR 140-232 (Second Affidavit of Sam P. Roberts, Assistant City Manager [Roberts Aff. II]).

applicant the opportunity to submit revised drawings that address city staff's comments.

"Statutory disapproval" is a term that Cedar Park and many other cities use to address the statutory requirements of section 212.009(a) of the Texas Local Government Code. Under the statute, the Planning and Zoning Commission must disapprove a plat application – even a plat application that lacks essential information – or else it will be considered statutorily approved.[8] In this case, the Planning and Zoning Commission disapproved Becky's application in order to provide Becky with additional time to address the city staff's comments, which will enable staff to complete its review. The Commission's November 18, 2014 "statutory disapproval" did not bias future consideration of Becky's applications.

As illustrated by the November 2014 correspondence between Becky's engineer and the city's planning staff, the city repeatedly informed Becky that it could not determine whether Becky would be required to construct a roadway to the Becky tract until Becky provided further information about the nature of its proposed project.[9] That information was not forthcoming prior to the November 18, 2014 Planning and Zoning Commission meeting.[10]

---

[8] *See* TEX. LOC. GOV'T CODE § 212.009(a) ("The municipal authority responsible for approving plats shall act on a plat within 30 days after the date the plat is filed. A plat is considered approved by the municipal authority unless it is disapproved within that period.").

[9] CR 177-84.

[10] CR 140-41 [Roberts Aff. II], at ¶ 7; CR 187-90.

The trial court heard the city's plea to the jurisdiction on December 4, 2014 and granted the plea on December 24, 2014.

## SUMMARY OF THE ARGUMENT

In order to implicate the *ultra vires* exception to governmental immunity, a plaintiff must make more than a bare assertion that public officials have acted without authority. The plaintiff must allege facts that, if true, would fall within the *ultra vires* exception. Here, the only fact that Becky has alleged is that the City Council authorized a development agreement with Milestone for the development of property that Becky does not own.

The *ultra vires* exception does not apply to discretionary actions. Not only is the City Council's decision to enter into a contract discretionary, but the specific contract term that Becky complains of – a provision that only requires Milestone to construct Phase 1 of the Old Mill Road extension to Becky's property – is itself discretionary per city ordinance. Specifically, the city's right-of-way ordinance provides that the city "may" require construction of a roadway depending on the traffic effects generated by a proposed development.

Contrary to Becky's assertion, the entirety of Phase II of the Old Mill Road Extension would not have been built by now but for the city's development agreement with Milestone. The fact is that but for the development agreement, there would not be a dedicated right-of-way connecting Becky's tract with South

Lakeline Boulevard at all, much less a fully constructed road. Whether for reasons of governmental immunity, standing, or ripeness, the trial court correctly determined that it lacked jurisdiction over Becky's claims.

## ARGUMENT AND AUTHORITIES

I. **Neither the facts that Becky has alleged nor the jurisdictional evidence support subject-matter jurisdiction over Becky's claims. [Appellant's Br. at 6-11].**

Becky begins its "Argument and Authorities" section by entreating the Court to focus on the facts alleged in its pleadings. Ironically, Becky has not pled facts that support its allegations, instead describing its lawsuit as follows: "In a nutshell, Becky asserts that the City, having delegated sole authority to the City's Planning Commission to approve plats and grant variances, had no authority, through its City Council, to grant a variance to Milestone."[11] Becky uses the term "variance" throughout its briefing. But Becky has not alleged any facts in its pleadings that would demonstrate that the City Council approved a "variance" as that term is generally understood.[12]

---

[11] Appellant's Br. at 7.

[12] The term "variance" as it relates to subdivision regulations is a procedural term of art defined by Chapter 212 of the Texas Local Government Code and section 12.03.004 of the City of Cedar Park Code of Ordinances. CR 242-43; Appellant's Appendix F. Becky concedes that Milestone never applied for a "variance" as that term is defined in section 12.03.004 or the Local Government Code. Appellant's Br. at 10. Despite Becky's citation to City Code, it appears that Becky is using the term "variance" more generally to mean any deviation from the city's subdivision regulations.

8

Instead, Becky complains that the City Council approved a development agreement that: (1) did not require Milestone to construct the portion of Old Mill Road that connects to the Becky tract; and (2) did not require Milestone to construct "infrastructure improvements" – which Becky defines as the portion of Old Mill Road that connects to the Becky tract – within one year from the date that the city approved Milestone's final plat. Neither of these allegations constitutes a "waiver, exemption, or variance"[13] from the City's Code of Ordinances. To the contrary, the City Code specifically provides the city with discretion regarding whether to require road construction at all, depending in part on whether a roadway is needed "to offset the traffic effects generated by a proposed development."[14] The City Council's decision to approve a development agreement that only required Milestone to construct the portion of Old Mill Road that the city deemed necessary to serve Milestone's proposed development was entirely consistent with this provision.

In *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004), the Texas Supreme Court held that a defendants' plea to the jurisdiction may implicate the merits of the plaintiff's cause of action and may

---

[13] Appellant's Br. at 3.

[14] CR 56-57 / Appendix B (City of Cedar Park Code of Ordinances, § 16.02.005). The City Charter and Code of Ordinances also are publicly available at *http://z2.franklinlegal.net/franklin/Z2Browser2.html? showset=cedarparkset*.

9

include evidence. If it does, the Court must review the relevant evidence to determine if a fact issue exists.[15] If the relevant evidence is undisputed or fails to raise a fact issue, the trial court should grant the plea.[16] Here, the city submitted uncontroverted affidavits and other supporting documentation and requested that the Court consider it when ruling on the city's plea to the jurisdiction.[17] The Court therefore may consider the city's jurisdictional evidence in determining whether the trial court had subject matter jurisdiction.

Neither the facts alleged nor the evidence submitted in this case implicate the approval of a "variance" under the Cedar Park Code of Ordinances. Therefore, even if true, none of the facts that Becky, Ltd. has alleged actually support its legal claims.

## II. Both the city and the city council members acting in their official capacities are entitled to governmental immunity.

### A. Becky has not implicated the *ultra vires* exception to immunity because the City Council's decision to contract with Milestone was a discretionary act. [Appellant's Br. at 12-17]

---

[15] *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227-28 (Tex. 2004).

[16] *Id.*

[17] CR 38, 40 ("The City hereby incorporates by reference and for all purposes the affidavits and other supporting documentation included in the attached Appendix and asks the Court to consider it when ruling on the City's plea to the jurisdiction."). In a concurring opinion in *Cokins v. City of Lakeway*, No. 03-12-00083-CV, 2013 WL 4007522, at *5 (Tex. App. – Austin July 25, 2013, no pet.) (mem. op.), Chief Justice Jones explained that in order for the Court to consider evidence as part of a jurisdictional challenge under *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex.2004), the party challenging jurisdiction must request that the court consider evidence when ruling on the plea. That is what the city did here.

10

Governmental immunity bars suits that seek to control government action.[18] A suit seeks to control government action when the judgment would effectively direct or control a government official in the exercise of his or her discretionary statutory authority.[19] The Texas Supreme Court has recognized a limited exception to the doctrine of governmental immunity when the plaintiff has alleged that governmental officials have acted without legal authority or failed to perform a purely ministerial act.[20] An action is not *ultra vires*, however, when it falls within the governmental official's exercise of discretion.[21]

Here, governmental immunity bars Becky's claims because they seek to invalidate the city's development agreement with Milestone.[22] A city council's decision to enter into a contract is a discretionary, legislative decision that is not subject to attack through the *ultra vires* exception to immunity from suit.[23] On

---

[18] *Texas Logos, LP v. TxDOT*, 241 S.W. 3d 105, 118 (Tex. App. – Austin 2007, no pet.).

[19] *Id.*

[20] *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

[21] *See Texas Logos*, 241 S.W. 3d at 118.

[22] CR 191, 192 (Pl.'s 2nd Am. Pet.) ("By this suit, Plaintiffs challenge the validity of a Unified Development Agreement (the "Agreement") by and between Cedar Park and Milestone as an *ultra vires* act of the City Council.").

[23] *See, e.g, Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 706 (Tex.2003) (holding newly elected commissioners court immune from suit where it "acted within its discretion to protect the perceived interests of the public" in rejecting contract approved by predecessor).

September 12, 2013, the City Council voted unanimously to authorize the City Manager to execute the Agreement.[24]  That is the only action by the City Council that Becky has identified.  Although Becky's petition does allege that the approval or disapproval of a *plat* is a ministerial function,[25] none of Becky's causes of action challenge the Planning and Zoning Commission 's action approving Milestone's plat.  Nor has Becky sued the commissioners in their official capacities.

Instead, Becky has sued the council members in their official capacities based on their approval of the Agreement.  Because that was a discretionary decision, the trial court lacked subject matter jurisdiction over Becky's claims against the city council members.

Although Becky concedes that the City Council has the discretion to contract generally, Becky alleges that the council exceeded its discretionary authority as to this particular contract by including a term that required Milestone to construct the Phase I extension of Old Mill Road but did not mandate the construction of Phase II all the way to the Becky property.  Even taken at face value, Becky's argument fails.  Becky has not and cannot point to a provision in the City's Code of Ordinances that makes the construction of a roadway mandatory in this situation.  Instead, Becky directs the Court to general language in the subdivision ordinance

---

[24] CR 59-71 (Minutes of September 12, 2013 meeting of the Cedar Park City Council).

[25] CR 191, 193.

12

that refers to the completion of an undefined set of "required subdivision improvements."[26]

The applicable portion of the City Code is section 16.01.005 of the city's transportation regulations, "Dedication of right-of-way."[27]  Subsections (a) through (c) describe the circumstances under which a developer must dedicate right-of-way as part of the platting process.  Those provisions apply only "[i]f the director of planning determines that all or portion of the right-of-way is needed to accommodate additional traffic expected to be generated by the proposed development."[28]  It is undisputed from the city's jurisdictional evidence that the Agreement required Milestone to dedicate sufficient right-of-way to reach the Becky development.[29]  Even this provision is discretionary: not every proposed development will require a dedication of right-of-way because not every proposal will create sufficient additional traffic.

Becky's real complaint, however, is addressed by subsection (d), which applies to roadway construction:

---

[26] *See, e.g.*, Appellant's Br. at 2 (citing City of Cedar Park Code of Ordinances §§ 12.15.003(b) and (c) / Appellant's Appendix G).

[27] CR 55-57 / Appendix B.

[28] *Id*. at § 16.02.005(a).

[29] *See* CR 52-54 [Roberts Aff.], at ¶¶ 3-5.

> In addition to the dedication of right-of-way, the city *may* require the construction of a roadway improvement or *may* assess a fee instead of requiring construction of a roadway improvement to offset the traffic effects generated by a proposed development.[30]

Just as the use of the word "shall" evidences the mandatory nature of a duty imposed by a legislative act,[31] the use of the word "may" "creates discretionary authority or grants permission or power."[32]  Not every development requires a new road to offset traffic effects generated by the proposed development.  And by providing that the decision maker is to be the "city" generally, the City Council has reserved to itself the ultimate discretion of whether to require roadway construction.[33]  In the instant case, that council manifested that discretion through the terms of the Agreement.[34]

The cases Becky cites are distinguishable.  In *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578 (Tex. 2015), Southwestern Bell alleged that the governing body of

---

[30] CR 56-57/Appendix B (City of Cedar Park Code of Ordinances, § 16.02.005(d)) (emphasis added).

[31] *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015).

[32] TEX. GOV'T CODE § 311.016(1) (Code Construction Act); *Bd. of Adjustment of the City of San Antonio v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002) ("Courts use the same rules that are used to construe statutes to construe municipal ordinances.").

[33] *See DeSoto Wildwood Dev., Inc. v. City of Lewisville,* 184 S.W.3d 814, 826 (Tex. App. – Fort Worth 2006, no pet.) (recognizing that cities express themselves through actions of the City Council in a meeting duly assembled).

[34] CR 53 [Roberts Aff.], at ¶¶ 3-6; *see also* CR 9-23 / Appendix A (Agreement), at ¶¶ 2-3, 10.

14

a water district exceeded its authority under a statute that provided that certain types of public infrastructure relocations "*shall* be done at the sole expense of the district or water supply corporation unless otherwise agreed to in writing."[35] The Supreme Court held that the legislature's use of the word "shall" indicated that the commissioners' duty under the statute to provide for payment of infrastructure relocations was mandatory.[36] Therefore, the individual commissioners were not immune from suit against them in their official capacities alleging that the actions they took to shift those costs to the utility were *ultra vires*.[37]

Similarly, *City of New Braunfels v. Tovar*, No. 03-14-00693-CV, 2015 WL 2183479 (Tex. App. – Austin May 7, 2015, no pet. h.) involved a suit by a police officer against the members of a municipal civil service commission in their official capacities. Tovar alleged that the commissioners acted *ultra vires* when they failed to award him additional seniority points on his civil service exam as mandated by a statute that provided, "The grade that *must* be placed on the eligibility list for each police officer or fire fighter *shall* be computed by adding the applicant's points for seniority to the applicant's grade on the written

---

[35] *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 588 (Tex. 2015).

[36] *Id.*

[37] *Id.*

examination[.]"[38]  The Court held that because Tovar was suing to enforce a mandatory right under the statute, Tovar had properly invoked the *ultra vires* exception to governmental immunity.[39]  Here, Becky has pointed to no such mandatory, ministerial duty on the part of the council members because no such duty exists.

There has been no waiver of the city's governmental immunity under the *ultra vires* exception for at least one other reason.  "[T]he *ultra vires* rule is subject to important qualifications.  Even if such a claim may be brought, the remedy may implicate immunity" if it constitutes anything other than prospective relief.[40]  A suit that seeks to control state action by invalidating a contract is retrospective in nature.[41]  Here, Becky wants the Court to declare that "the City Council's action in granting a variance through the Agreement was *ultra vires*, rendering at least that portion of the Agreement void."[42]  Therefore, even assuming, for the sake of argument, that the City Council's decision to contract with Milestone were a

---

[38] *City of New Braunfels v. Tovar*, No. 13-14-00693-CV, 2015 WL 2183479, at *1-2 (Tex. App. – Austin May 7, 2015, no pet. h.) (emphasis added).

[39] *Id*. at *4.

[40] *Heinrich*, 284 S.W.3d at 373-76.

[41] *Texas Logos*, 241 S.W.3d at 120-21 (distinguishing impermissible suit to invalidate a contract from permissible suits to compel state official and agencies to comply with their statutory authority).

[42] Appellant's Br. at 8.

16

ministerial act, the remedy that Becky is seeking would constitute impermissible retrospective relief. Governmental immunity still would bar Becky's claims against the city.

"[B]are conclusions . . . are not sufficient—the pleader must allege *facts* that affirmatively demonstrate the trial court's subject-matter jurisdiction."[43] Becky cannot conjure subject matter jurisdiction merely by invoking the phrase "*ultra vires.*" Rather, Becky must at a minimum direct the Court to some ministerial duty created by statute or possibly ordinance that the city council members have exceeded. Because Becky has not alleged facts that, if true, would amount to an *ultra vires* act by the named council members, there has been no waiver of the city's governmental immunity.

**B. The UDJA does not waive a city's governmental immunity from a suit to declare rights under an ordinance. [Appellant's Br. at 17-19]**

Alternatively, Becky argues that the UDJA waives governmental immunity from its claims against the city because Becky is seeking a declaration to construe rights under city ordinances. The Texas Supreme Court considered and rejected this argument in *Texas Dept. of Transp. v. Sefzik*, 355 S.W.3d 618 (Tex. 2011). There, the Court held, "The UDJA does not waive the state's sovereign immunity

---

[43] *Creedmoor-Maha Water Supply Corp. v. Tex. Com'n on Envtl. Quality*, 307 S.W.3d 505, 525 (Tex. App. – Austin 2010, no pet.) (emphasis in original).

when the plaintiff seeks a declaration of his or her rights under a statute or other law."[44]  The Court held that because Sefzik was not challenging the validity of a statute but only a state agency's actions under it, there was no waiver of immunity from his claims.[45]  In this case, Becky wants the court to "determine the parties' rights, status, and legal relations under those ordinances."[46]  The UDJA does not waive the city's governmental immunity from these types of claims.

Becky's reliance on *Texas Lottery Com'n v. First State Bank of DeQueen*, 325 S.W.3d 628 (Tex. 2010) is misplaced.[47]  The appellant in *City of Dallas v. Texas EZPAWN, L.P.*, No. 05-12-01269-CV, 2013 WL 1320513, at * 3 (Tex. App. – Dallas Apr. 1, 2013, no pet.) (mem. op.) made the same argument that Becky makes here.  But as the Dallas Court of Appeals explained:

> The issue in [*Texas Lottery Commission*] was whether provisions of the Texas Uniform Commercial Code conflicted with provisions of the Texas Lottery Act and, consequently, rendered the provisions of the Texas Lottery Act ineffective. Although the court used language like "statutory interpretation" and "statutory construction," it was undisputed that the lawsuit challenged the validity of the provisions of the Texas

---

[44] *Texas. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011).

[45] *Sefzik*, 355 S.W.3d at 622.

[46] Appellant's Br. at 19.

[47] *See id*. at 18.

18

> Lottery Act and did not simply seek an interpretation of the statute.[48]

The court of appeals held that because EZPAWN sought only the interpretation of an ordinance and a declaration of its rights under it, those allegations affirmatively negated the trial court's subject matter jurisdiction.[49]

Similarly, in *Lone Star College Sys. v. Immigration Reform Coalition of Texas (IRCOT)*, 418 S.W.3d 263 (Tex. App. – Houston [14th Dist. 2013, pet. denied), which Becky also cites, the appellant both sought an interpretation *and* asserted the invalidity of Texas statutes.[50]  In a more recent opinion, *Saifi v. City of Texas City,* No. 14-13-00815-CV, 2015 WL 1843540 (Tex. App. – Houston [14th Dist.] Apr. 23, 2015, no pet.) (mem. op.), the Fourteenth Court of Appeals affirmed that the UDJA does not waive a city's governmental immunity to the extent a plaintiff is merely seeking a declaration of rights under a statute or ordinance.[51]

---

[48] *City of Dallas v. Texas. EZPAWN, L.P.*, No. 05-12-01269-CV, 2013 WL 1320513, at * 3 (Tex. App. – Dallas Apr. 1, 2013, no pet.) (mem. op.) (citations omitted).

[49] *Id.*

[50] *Lone Star Coll. Sys. v. Immigration Reform Coal. of Texas* (IRCOT), 418 S.W.3d 263, 271 (Tex. App. – Houston [14th Dist.] 2013, pet. denied).

[51] *Saifi v. City of Texas City*, No. 14-13-00815-CV, 2015 WL 1843540, at *3 (Tex. App. – Houston [14th Dist.] Apr. 23, 2015, no pet.) (mem. op.).

It is well-settled following *Sefzik* that the UDJA does not waive a city's governmental immunity from a suit that merely seeks the interpretation of a statute or ordinance.[52] Therefore, there has been no wavier of the city's immunity in this case.

## III.    Becky lacks standing because it was not a party to the Agreement. [Appellant's Br. at 19-23]

A person has standing to sue when he is personally aggrieved by an alleged wrong.[53]  Without a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate.[54]  Only the person whose primary legal right has been breached may seek redress for an injury.[55]  The alleged injury must be "concrete and particularized, not merely conjectural or hypothetical.[56]  "Without breach of a

---

[52] *See, e.g., Williams v. Texas Tech Univ. Health Sciences Ctr.*, No. 10-15-00005-CV, 2015 WL 2452513, at *2 (Tex. App. – Waco May 21, 2015, no pet. h.) (mem. op.) (recognizing that UDJA does not waive immunity where appellant only challenged interpretation of university policy and did not challenge validity of municipal ordinance or statute); ***VanderWerff v. Tex. Bd. of Chiropractic Examiners*, No. 03-12-00711-CV, 2014 WL 7466814, at *3 n. 4 (Tex. App. – Austin Dec. 18, 2014, no pet.) (mem. op.) ("Appellant's petition does not challenge the validity of any statutes  . . . [T[he UDJA does not waive sovereign immunity when a plaintiff seeks a declaration of his rights under a statute."**).

[53] *Nootsie Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996).

[54] *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex.App.-Tyler 2002, pet. denied); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 669–70 (Tex. App.-Fort Worth 2001, pet. denied); *Brunson v. Woolsey*, 63 S.W.3d 583, 587 (Tex. App.-Fort Worth 2001, no pet.).

[55] *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976) (defrauded party only can bring suit to set aside deed obtained by fraud).

[56] *Save Our Springs Alliance, Inc. [SOS] v. City of Dripping Springs*, 304 S.W.3d 871, 878 (Tex. App. – Austin 2010, pet. denied).

legal right belonging to the plaintiff no cause of action can accrue to his benefit."[57] The court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it.[58]

In cases analogous to this one, the courts of appeals have declined to recognize that a third party has standing to challenge a city's decision to enter into a development agreement with a neighboring property owner. In *Save Our Springs Alliance, Inc. [SOS] v. City of Dripping Springs*, 304 S.W.3d 871 (Tex. App. – Austin 2010, pet. denied), for example, SOS sought various declarations to invalidate development agreements between the city and private property owners. This Court held that because neither SOS nor its members had an interest in the properties that were the subject of the development agreements, SOS lacked standing.[59]

Similarly, in *Schechter v. Wildwood Developers, LLC*, 214 S.W.3d 117 (Tex. App. – El Paso 2006, no pet.), plaintiff sued the city for a declaration that the city's approval of a subdivision plat was void because it did not comply with the city's ordinances. Specifically, plaintiff alleged that construction of the planned subdivision as depicted on the challenged plat would cause a decrease in his

---

[57] *Nobles*, 533 S.W.2d at 927.

[58] *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012).

[59] *SOS*, 304 S.W.3d at 882.

property values. The court held that none of plaintiff's complaints about his neighbor's property were based on or related to plaintiff's rights, status, or legal relationship under a statute, ordinance, contract or franchise.[60] Therefore, the trial court lacked subject matter jurisdiction over plaintiff's claims.[61]

Here, Becky is in the same position as the plaintiffs in *SOS* and *Schechter*. Like the plaintiffs in those cases, Becky seeks various declarations regarding Milestone's property – property to which Becky has not alleged any ownership interest. At most, Becky alleges that the city's actions in relation to Milestone's property will result in a decrease in value of Becky's property. This was the standing argument considered and rejected by the court in *Schechter*.[62]

In *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919 (Tex. App. – Austin 2010, no pet.), plaintiffs, an association of business owners who rented inner tubes and beverage coolers, challenged four city ordinances: (1) an ordinance regulating volume drinking devices (the "beer bong" ordinance); (2) an ordinance regulating five-ounce containers (the "jello shot" ordinance); (3) an ordinance regulating the consumption of alcohol in public parks (the "parks" ordinance); and (4) an ordinance regulating coolers and containers exceeding

---

[60] *Schechter v. Wildwood Developers, LLC*, 214 S.W.3d 117, 121-22 (Tex. App. – El Paso 2006, no pet.).

[61] *Id.*

[62] *See id.*

sixteen quarts (the "cooler" ordinance). Of those four ordinances, this Court held that plaintiffs lacked standing to challenge the first three because those ordinances did not impose any direct restrictions on the plaintiffs and because plaintiffs did not plead facts demonstrating injury from the challenged restrictions: "Although [plaintiffs] broadly complain of lost revenues they 'attribute' to the ordinances collectively, these bare conclusions are insufficient to affirmatively demonstrate their standing."[63] The Court did, however, hold that plaintiffs had standing to challenge the cooler ordinance because plaintiffs had alleged that they purchased coolers to rent to customers and that the city's ordinance rendered those coolers valueless.

Here, the terms of the Agreement only apply to the development of the Milestone property. Like the business owners' challenges to the beer bong, shot glass, and parks ordinances in *Stop the Ordinances Please,* Becky lacks standing to challenge the validity of the Agreement because Becky has not pled facts demonstrating the Agreement imposes any direct restriction or regulatory burden on the Becky tract. Nor has Becky sufficiently pled facts demonstrating injury from the Agreement. Although Becky broadly complains of a hypothetical loss of property value that it attributes to the Agreement with Milestone, this bare conclusion is insufficient to affirmatively demonstrate standing. Unlike the

---

[63] *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 929-30 (Tex. App. – Austin 2010, no pet.).

23

business owners' challenge to the cooler ordinance in *Stop the Ordinance Please*, nothing in the language of the Agreement regulates Becky's property in any way.

Regarding the issue of damages, Becky's assertion that but for the Agreement, the Old Mill Road extension to the Becky tract would be built by now defies logic. First, the reasons that the Becky tract is landlocked are geography and the Cedar Park real estate market, not city council action. Further, as discussed above, the city's decision regarding whether to require construction of a road is discretionary. Becky does not allege that Milestone had an approved plat on file prior to the date of the Agreement that required road construction (it did not). So in reality, without the agreement, there would be no dedication of right-of-way from Lakeline Boulevard to the Becky tract, there would be no Milestone plat on file, and the Milestone tract would be just like the Becky tract – a vacant piece of land.

*City of Laredo v. Rio Grande H2O Guardian*, No. 04-10-00872-CV, 2011 WL 3122205 (Tex. App. – San Antonio Jul. 27, 2011, no pet.) is thus distinguishable because Becky has not alleged any actual harm. In *City of Laredo*, an association challenged a city's decision to rezone a piece of property from R-1 (Single-Family Residential) to M-1 (Light Manufacturing). The court of appeals held that the plaintiff association had standing because its members were nearby property owners who alleged they would suffer various environmental injuries as a

result of the changed use.[64] Here, although Becky is a nearby property owner, that is where the similarity ends. The injury that Becky has alleged is that the Agreement made Becky's property less valuable because it did not require Milestone to construct Phase II of Old Mill Road. This does not meet the "concrete and particularized injury" requirement for standing.[65] If anything, the Agreement would have made Becky's property more valuable by providing for the construction of Phase I of Old Mill Road and providing for the public right-of-way connecting to Becky's property.

Because Becky has failed to allege a particularized interest in Milestone's property or a concrete injury resulting from the Agreement, the trial court properly dismissed Becky's claims against the city for want of jurisdiction.

## IV. Becky's claims were not ripe because it never submitted a completed plat application to the city for review. [Appellant's Br. pp. 24-25]

A case is not ripe when its resolution depends on events that have not yet occurred, and ripeness is a threshold issue that implicates subject matter jurisdiction.[66] A plaintiff must demonstrate a concrete injury in order for a justiciable controversy to exist and to avoid premature adjudication of factually

---

[64] *City of Laredo v. Rio Grande H2O Guardian*, No. 04-10-00872-CV, 2011 WL 3122205, at *4-5 (Tex. App. – San Antonio Jul. 27, 2011, no pet.)

[65] *See SOS*, 304 S.W.3d at 878.

[66] *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-853 (Tex. 2000).

undeveloped claims. Therefore, a plea to the jurisdiction is an appropriate vehicle to challenge the non-justiciability of a claim due to a lack of ripeness.[67]

A case that is almost directly on point is *City of El Paso v. Maddox*, 276 S.W.3d 66 (Tex. App. – El Paso 2008, pet. denied). In that case, plaintiff was a developer who owned a tract of landlocked property. Plaintiff bought the property with the understanding that the city would require under its subdivision regulations the construction of a road to plaintiff's property across neighboring development. Instead, the city amended its subdivision ordinance to delete the requirement that subdivisions such as the one adjacent to plaintiff's property construct public streets to provide access to the neighboring property. Plaintiff sued the city for a regulatory taking, even though plaintiff never had submitted a subdivision application or any other type of development plan for plaintiff's own property and, therefore, the city never had made a final decision with respect to plaintiff's property. The court of appeals held that the trial court lacked jurisdiction over plaintiff's claims on the basis of ripeness:

> We conclude that the City has not been given an opportunity to make a final decision on Appellees' access to its property and Appellees have not presented evidence establishing that submitting a development plan or seeking a variance would have been futile. Accordingly,

---

[67] *Id.*

we reverse the order of the trial court denying the City's plea to the jurisdiction[.][68]

"Although a claim is not required to be ripe at the time of filing, if a party cannot demonstrate a reasonable likelihood that the claim will soon ripen, the case must be dismissed."[69]

Here, although Becky has made some attempt to ripen its claims, nothing significant has changed since plaintiff filed its original petition in May 2014. The fact is, the city has not taken a final action on the merits of Becky's application. Any final action that city staff may ultimately recommend to the Planning and Zoning Commission will depend on whether plaintiff submits the required revisions to the city and what those revisions contain. Any final action that the Commission may take will depend on the votes of the commissioners acting as a legislative body. Becky's fears about what the city may or may not require after plaintiff has addressed the comments provided by the city planning staff, at which

---

[68] *City of El Paso v. Maddox*, 276 S.W.3d 66, 75 (Tex. App. – El Paso 2008, pet. denied); *see also City of Corinth v. NuRock Dev., Inc.*, 293 S.W.3d 360, 369-70 (Tex. App. – Fort Worth 2009, no pet.) (holding developer's request for injunctive relief not ripe to prevent city from "arbitrarily and capriciously applying ordinances and variances" as to developer's property); *Coble v. City of Mansfield*, 134 S.W.3d 449, 458-59 (Tex. App. – Fort Worth 2004, no pet.) (holding developer's claim for damages not ripe because developer had not completed subdivision process and city had not made final decision as to applicability of roadway ordinance to developer's property).

[69] *Robinson v. Parker*, 353 S.W.3d 753, 755 (Tex. 2011).

point the planning department will be able to complete its review process, are still entirely speculative.

In sum, the Court lacks jurisdiction over this lawsuit because the threatened harm claimed by plaintiff - that it *may be required* to construct a portion of a road – turns on events that have not occurred and may never occur in the future.

## V. Becky's claims are moot. [Appellant's Br. at 25-28]

The trial court lacked subject matter jurisdiction over Becky's claims against the city based on the doctrines of governmental immunity, standing, and ripeness. The city also has asserted that the trial court lacked jurisdiction based on the doctrine of mootness pursuant to *Save Our Springs Alliance, Inc. [SOS] v. City of Austin*, 149 S.W.3d 674 (Tex. App. – Austin 2004, no pet.). Here, because the City Council validly approved the Agreement,[70] any claim by Becky that the City Council acted without authority is moot.

## PRAYER

For these reasons, Appellees, the City of Cedar Park, Stephen Thomas, Matt Powell, Mitch Fuller, Lyle Grimes, Lowell Moore, Jon Lux, and Don Tracy, respectfully request that the Court of Appeals affirm the decision of the trial court and for such other relief, at law or in equity, to which Appellees shall show themselves justly entitled.

---

[70] CR 59-71 (Minutes of September 12, 2013 Cedar Park City Council Meeting).

28

Respectfully submitted,

**BICKERSTAFF HEATH
DELGADO ACOSTA LLP**
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746
(512) 472-8021 Telephone
(512) 320-5638 Facsimile

    Cobby A. Caputo
    State Bar No. 03784650
    ccaputo@bickerstaff.com

By:   /s/ Bradley B. Young
    Bradley B. Young
    State Bar No. 24028245
    byoung@bickerstaff.com

    **ATTORNEYS FOR APPELLEES**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document has been served via electronic filing service provider, email, facsimile, and/or Certified Mail Return Receipt Requested to all parties of record on this the 29th day of July, 2015.

Elizabeth G. Bloch
Husch Blackwell LLP
111 Congress Avenue, Suite 1400
Austin, Texas 78701-4093
(512) 472-5456
(512) 479-1101 (FAX)
Heidi.bloch@huschblackwell.com

Leonard B. Smith
P.O. Box 684633
Austin, Texas 78768
(512) 914-3732
(512) 532-6446 (FAX)
lsmith@leonardsmithlaw.com

**ATTORNEYS FOR APPELLANT**

/s/ Bradley B. Young
Bradley B. Young
State Bar No. 24028245
byoung@bickerstaff.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify that this Brief has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. I also certify that this response brief complies with the word count limitations contained in Texas Rule of Appellate Procedure 9.4(i)(2) because, excluding contents identified in Rule 9.4(i)(1), it contains 6039 words. I relied on the computer-generated word count of Microsoft Word, which is the software used to prepare this brief.

/s/ Bradley B. Young
Bradley B. Young
State Bar No. 24028245
byoung@bickerstaff.com

# **APPENDIX**

A. Unified Development Agreement (pp 9-23 of the clerk's record)

B. City of Cedar Park Code of Ordinances Section 16.02.005

# APPENDIX A

## UNIFIED DEVELOPMENT AGREEMENT

THIS UNIFIED DEVELOPMENT AGREEMENT (this "**Agreement**") is entered into to be effective as of October 7, 2013 (the "**Effective Date**"), by and between **MILESTONE COMMUNITY BUILDERS, LLC**, a Texas limited liability company ("**Milestone**"), and the **CITY OF CEDAR PARK, TEXAS** (the "**City**"). Milestone and the City are referred to hereinafter individually as a "**Party**" and collectively as the "**Parties**."

### RECITALS

A.     Milestone has submitted to, and is processing with, the City, the following applications relating to that certain real property, located in Williamson County, Texas and within the boundaries of the City, as described on **Exhibit "A"**, attached hereto and incorporated herein by reference (the "**Property**"):  (i) a subdivision plat pursuant to which the Property and adjacent 8.408-acre commercial tract will be subdivided into four (4) lots (City Case No. FP-13-004), referred to herein as the "**Plat**;" and (ii) two (2) site plans of the Property, referred to herein as the "**Site Plans**," pursuant to which Milestone will construct, in two (2) distinct phases of approximately 62 units (City Case No. SD-13-00019) and 141 units (City Case No. SD-13-00026), respectively, a total of approximately two hundred three (203) townhome units.  The condominium project to be constructed on the Property pursuant to the Site Plans is referred to herein as the "**Project**."

B.     In connection with the Project, **LAKELINE FUND, LTD.**, a Texas limited partnership ("**Lakeline Fund**"), has contractually agreed with Milestone that it will dedicate right-of-way to the City, and Milestone will design, permit and construct and contribute to the cost of various on-site and off-site transportation improvements that benefit the Project and adjacent/nearby properties (the "**Transportation Improvements**").

C.     The Parties now desire to enter into this Agreement, subject to the terms and conditions set forth hereinbelow, to provide for unified development of the Project on the Property and the funding and development of the Transportation Improvements in connection therewith.

### AGREEMENT

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter contained, and of other good and valuable consideration the receipt, sufficiency and adequacy of which the Parties mutually acknowledge, Milestone hereby declares that, upon its acquisition of the Property, the Property shall be subject to the following covenants, conditions, and restrictions, which shall run with the Property and bind all Parties and successors in interest, and the Parties hereby agree to the following:

1.     Unified Development.  For purposes of review, modification, or approval of the Site Plans by the City, the Property will be constructed as a unified development, regardless of the Property being comprised of two (2) lots upon recordation of the Plat in the Official Public Records of Williamson County, Texas.  A current copy of the Plat is attached hereto as **Exhibit "B"**.  Any proposed modifications to the Property or any portion of either lot therein will be construed as a modification to a single site, requiring review of the Property in accordance with the provisions of the City's Code of Ordinances and this Agreement.  This section applies to, but is not limited to, drainage, detention and/or water quality infrastructure relating to the Property.

2.     Right-of-Way Dedication.  Milestone covenants and agrees with the City that it will enforce the terms of its purchase contract with Lakeline Fund so as to cause to be dedicated the City, to be owned, operated and maintained by the City upon completion and acceptance by the City, the right-of-way for the extension of Old Mill Road, said right-of-way measuring from sixty-four feet (64') to seventy feet (70') in width and twelve hundred ten linear feet (1210'), as more particularly depicted on **Exhibit "C-1"** attached hereto and incorporated herein by reference (the "**Old Mill Road Extension**").

The foregoing dedication may be made either via recording the applicable subdivision plat or by separate dedication and/or easement instrument.

W0593672.9}

3. Old Mill Road Extension. Within thirty (30) days after the latter to occur of recordation of the Plat in the Official Public Records of Williamson County, Texas, and approval of both Site Plans, Milestone shall commence and diligently pursue to completion the design, permitting and construction of "Phase 1" of the Old Mill Road Extension in compliance with all applicable governmental requirements pursuant to construction plans approved by the City (collectively, the "**Phase 1 Improvements**"). The Phase 1 Improvements are more particularly described on **Exhibit "C-1"** attached hereto and incorporated herein by reference and shall, in any event, be constructed per the "residential collector" standard as set forth in the City's Code of Ordinances. The City shall use all reasonable efforts to expeditiously approve the plans and specifications for the Phase 1 Improvements; however, approval of such plan and specifications shall not be a condition precedent to Milestone's construction of the Project, which shall be permitted to proceed pending construction of the Old Mill Road Extension, except that the Phase 1 Improvements shall be completed and accepted by the City prior to issuance of the last certificate of occupancy for the phase of the Project submitted under City Case No. SD-13-00019 and the 1st building permit for the phase of the Project submitted under City Case No. SD-13-00026. Notwithstanding the foregoing, Milestone shall have no obligation to design, permit, construct or fund, in whole or part, any utilities to be located within the Old Mill Road Extension, including, but not limited to, wastewater, electric, gas, or telecommunications facilities, signal facilities, and landscape improvements along the Old Mill Road Extension (regardless of whether they may be required under any existing or subsequently enacted ordinance), except that Milestone shall design, permit, and construct that portion of the twelve inch (12") water line to be located within the Old Mill Road Extension, as set forth in **Exhibit "C-1"** (the "**12" Water Line**"), which serves the phase of the Project submitted under City Case No. SD-13-00019.

The City shall be responsible for the construction costs and inspection fees relating to the 12" Water Line, up to a total maximum contribution by the City not to exceed $87,000 by ten percent (10%) or more, which amount shall be payable to Milestone in installments on a draw basis as the project proceeds. The City shall process Milestone's applications for payment in more than two (2) weeks from the date of submittal.

Notwithstanding the foregoing, or any provision herein to the contrary, the City confirms and agrees that, with respect to turn/deceleration lanes, Milestone shall only be obligated to construct turn/deceleration lanes as shown on the Site Plan.

4. Stub-Out to Lot 121, Riviera Subdivision. Milestone covenants and agrees that it will construct the private drive within the Property so as to stub out at the boundary line of the Property and Lot 121, Riviera Springs Subdivision, a subdivision in Williamson County, Texas, according to the map or plat thereof, recorded in Cabinet B, Slides 167-169, Plat Records of Williamson County, Texas ("**Lot 121**"). Such stub-out may include a laydown curb and any adjacent fence must be gated at the stub-out. In no event, however, shall Milestone be obligated to dedicate any property or construct any improvements out of or on Lot 121.

5. Confirmation Regarding Cross-Connection to Retirement Village. The City confirms and agrees that a cross-connection to the retirement village property located adjacent to the Property will not be required.

6. Traffic Signal. As a condition precedent to the City's approval of the Site Plans, Milestone shall post fiscal surety in the amount of Twenty-Five Thousand and No/100 Dollars ($25,000.00) to fund a portion of the estimated cost of the design, permitting and construction of one (1) traffic signal at the intersection of Old Mill Road and Lakeline Boulevard. Traffic Signal will be installed by City once intersection meets signal warrants and remainder of funds are available.

7. Traffic Impact Analysis Not Required. The City confirms and agrees with Milestone that in no event shall a traffic impact analysis be required as a condition to or in connection with construction and development of the Transportation Improvements, the Old Mill Road Extension, or the Project.

8. Detention Facility. In consideration of the dedication of right-of-way for the Old Mill Road Extension and Milestone's design, permitting and construction of Phase 1 thereof, the City covenants and agrees to

{W0593672.9}

accept and approve, the water quality and detention facility located on Lot 15, Block C, THE RESERVE AT BRUSHY CREEK, SECTION 1, a subdivision in Williamson County, Texas, according to the map or plat thereof recorded under Document No. 2012028430 in the Official Public Records of Williamson County, Texas, upon Milestone having: (i) exercised commercially reasonable efforts to revegetate the top of pond walls along Breakaway Rd.; and (ii) revegetated the portions of the pond along Brushy Creek Rd. from top of cliff to top of slope, such revegatation to include top soil and soil retention blanket.

9. <u>Construction Access: Sales Office</u>. Milestone's construction of a compacted base roadway providing for all-weather access prior to the issuance of a building permit for any condominium unit within the Property shall, upon the City's approval, be deemed to satisfy the City's requirement for construction of an all-weather access road prior to the issuance of a building permit for vertical construction. Milestone shall also be permitted to set up and maintain a sales trailer in the location shown on **Exhibit "D"**, attached hereto, provided that Milestone constructs the parking area and related improvements as shown on **Exhibit "D"**.

10. <u>Limitation on Milestone's Obligation to Construct Right-of-Way</u>. The City acknowledges and agrees that, except as expressly set forth in this Agreement, Milestone shall have no obligation whatsoever to dedicate or construct any street, road, turn lane improvements or other right-of-way within or serving the Property, nor any improvements related thereto.

11. <u>Automatic Termination Provision; Representations</u>. Notwithstanding any provision herein to the contrary, in the event that, for any reason, Milestone does not ultimately acquire the Property, then this Agreement and all rights and obligations of the Parties hereunder shall be null and void and of no further effect.

12. <u>Default; Remedies</u>. If one party to this Agreement believes the other party has defaulted in the performance of any condition, term, or obligation owed to that party under this Agreement, such party shall after discovery of said default, give written notice of the default to the other party specifying in detail the provision or provisions of this Agreement that have allegedly been breached, what specific action must be taken to cure or correct the default. The party giving the notice of default may then exercise any remedies available at law or in equity.

13. <u>Separate Status</u>. None of the terms or provisions of this Agreement shall be deemed to create a partnership between or among the Parties in their respective businesses or otherwise, nor shall it cause them to be considered joint ventures or members of any joint enterprise.

14. <u>Construction and Interpretation</u>. The captions preceding the text of each article and section of this Agreement are included only for convenience of reference. Captions shall be disregarded in the construction and interpretation of this Agreement. Capitalized terms are also selected only for convenience of reference and do not necessarily have any connection to the meaning that might otherwise be attached to such term in a context outside of this Agreement. This Agreement may be executed in several counterparts; each of which shall be deemed an original. The signatures to this Agreement may be executed and notarized on separate pages, and when attached to this Agreement shall constitute one complete document.

15. <u>Assignability by Milestone</u>. Milestone shall be authorized to assign or transfer its rights, duties and obligations under this Agreement to an affiliate of Milestone under common ownership and control without the consent of the City. Milestone may also assign its rights, duties and obligations under this Agreement to any other owners of all or portions of the Property with written consent of the City. The City covenants and agrees to execute any estoppel certificates (in a form reasonably acceptable to the City) required by such financial lenders regarding the status of this Agreement.

16. <u>Complete Agreement</u>. This Agreement represents the complete agreement of the Parties with respect to the subject matter and supersedes all prior written and oral matters related to this Agreement. Any amendment to this Agreement must be in writing and signed by the Parties or permitted assignees.

{W0593672.9}

11

17. Notice. Any notice or demand, which any Party is required to or may desire to serve upon another, must be in writing, and shall be sufficiently served if (i) personally delivered, (ii) sent by facsimile, (iii) sent by registered or certified mail, postage prepaid, or (iv) sent by commercial overnight carrier, and addressed to:

Milestone:        Milestone Community Builders, LLC
9111 Jollyville Road, Suite 111
Austin, Texas 78759
Attention: Garrett S. Martin, President
Telephone: (512) 686-4986
Email:garrett@mymilestone.com

With a copy to:    Armbrust & Brown, PLLC
100 Congress Avenue, Suite 1300
Austin, Texas 78701
Attention: Joshua D. Bernstein
Telephone: (512) 435-2379
Facsimile: (512) 435-2360
Email: jbernstein@abaustin.com

City:            City of Cedar Park, Texas
450 Cypress Creek Road, Building One
Cedar Park, Texas 78613
Attention: City Manager
Telephone: (512) 258-4121
Facsimile: (512) 250-8602

With a copy to:    City of Cedar Park, Texas
450 Cypress Creek Road, Building One
Cedar Park, Texas 78613
Attention: City Attorney
Telephone: (512) 401-5004
Facsimile: (512) 401-5005

or such other address or addresses which any Party may be notified in writing by any other Party to this Agreement. Such notice shall be deemed to have been served (a) four (4) business days after the date such notice is deposited and stamped by the U.S. Postal Service, except when lost, destroyed, improperly addressed or delayed by the U.S. Postal Service, or (b) upon receipt in the event of personal service, or (c) the first business day after the date of deposit with an overnight courier, except when lost, destroyed, improperly addressed or delayed by the courier, or (d) the date of receipt by facsimile (as reflected by electronic confirmation); provided, however, that should such notice pertain to the change of address to either of the Parties hereto, such notice shall be deemed to have been served upon receipt thereof by the party to whom such notice is given.

18. Force Majeure. The Parties agree that the obligations of each party shall be subject to force majeure events such as natural calamity, fire or strike.

19. Forum Selection. This Agreement and the relationship among the Parties shall be governed and interpreted under the laws of Texas without regard to any conflict of laws provision. Venue for any suit arising out of or related to this Agreement shall be exclusively the appropriate court in Williamson County, Texas.

20. <u>Representation of Authority</u>. The City represents and warrants to Milestone that City is duly authorized and empowered to enter into this Agreement. Milestone represents and warrants to the City that it has the requisite authority to enter into this Agreement and is a proper party to this Agreement.

21. <u>Signature Warranty Clause</u>. The signatories to this Agreement represent and warrant that they have the authority to execute this Agreement on behalf of the City and Milestone, respectively.

22. <u>Severability</u>. This Agreement is entered into in accordance with applicable law as understood by Milestone and the City. In the event any part, provision or paragraph hereof shall become unenforceable by reason of judicial decree or determination, the Parties hereto mutually agree to the extent possible to ensure that all other provisions of this Agreement, including the intent of this Agreement, be honored and performed.

23. <u>Further Assurances</u>. The Parties each agree that at any time after execution of this Agreement, they will, upon request of the other, execute and deliver such further documents and do such further acts and things as may be reasonably necessary or desirable to effectuate the terms of this Agreement.

24. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and all of which together shall be construed as one and the same instrument.

*[SIGNATURE PAGE FOLLOWS]*

EXECUTED to be effective as of the Effective Date.

MILESTONE:

**MILESTONE COMMUNITY BUILDERS, LLC,**
a Texas limited liability company

By:_____
          Garrett S. Martin, President


CITY:

**THE CITY OF CEDAR PARK, TEXAS**

By:_____
Name: Brenda Eivens
Title: City Manager

*Base Line* Land Surveyors, Inc.
8333 Cross Park Drive
Austin, Texas 78754
Office: 512.374.9722
Fax: 512.873.9743

METES AND BOUNDS DESCRIPTION

BEING 29.184 ACRES OF LAND, SURVEYED BY BASELINE LAND SURVEYORS INC., OUT OF THE RACHEL SAUL SURVEY, ABSTRACT NO. 551 AND THE RICHARD DUTY SURVEY, ABSTRACT NO. 183, BOTH IN WILLIAMSON COUNTY, TEXAS, AND BEING COMPRISED OF FOUR TRACTS: TRACT ONE BEING 20.490 ACRES OUT OF A 26.001 ACRE TRACT OF LAND CONVEYED TO BROOKE, LTD, BY INSTRUMENT OF RECORD IN DOC. NO. 199937125 OF THE OFFICIAL PUBLIC RECORDS OF WILLIAMSON COUNTY, TEXAS, AND DESCRIBED IN INSTRUMENT OF RECORD IN DOC. NO. 9618423 OF THE OFFICIAL RECORDS OF WILLIAMSON COUNTY, TEXAS; TRACT TWO BEING 0.301 OF ONE ACRE, CONVEYED AS 0.30 OF ONE ACRE TO BROOKE, LTD, BY INSTRUMENT OF RECORD IN DOC. NO. 2001053852 OF THE OFFICIAL PUBLIC RECORDS OF WILLIAMSON COUNTY, TEXAS; TRACT THREE BEING 7.952 ACRES OUT OF A 10.349 ACRE TRACT OF LAND CONVEYED TO PROPERTIES FUND TWO, LTD BY INSTRUMENT OF RECORD IN VOLUME 1581, PAGE 520 OF THE DEED RECORDS OF WILLIAMSON COUNTY, TEXAS; AND TRACT FOUR BEING 0.441 OF ONE ACRE OUT OF A 1.081 ACRE TRACT OF LAND CONVEYED TO PROPERTIES FUND TWO, LTD BY INSTRUMENT OF RECORD IN DOC. NO. 2008004670 OF THE OFFICIAL PUBLIC RECORDS OF WILLIAMSON COUNTY, TEXAS, AND BEING MORE COMPLETELY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING at a 1/2 inch iron rebar found for the southwest corner of said 26.001 acre tract, the southeast corner of Lot 2, Block A, Caspita, Section Two, a subdivision of record in Cabinet AA, Slides 289-290 of the Plat Records of Williamson County, Texas, and being in the northeasterly right-of-way line of South Lakeline Boulevard (90' R.O.W.), from which a 1/2 inch iron rebar found for a point of curvature in the south line of the 26.001 acre tract and the northeasterly right-of-way line of said South Lakeline Boulevard, bears South 82°21'32" East a distance of 329.67 feet (record - South 82°20'47" East a distance of 329.49 feet), and also from which a 1/2 inch iron rebar found for a point of curvature in the south line of said Lot 2, Block A, Caspita, Section Two and the northeasterly right-of-way line of South Lakeline Boulevard, bears North 82°25'58" West a distance of 247.35 feet (record - North 82°25'58" West a distance of 247.35 feet); [Point of Commencing coordinates: Northing= 10147003.2514; Easting= 3087892.1614];

THENCE North 20°50'54" West (record - North 20°50'47" West), along the west line of the 26.001 acre tract and the east line of Lot 2, Block A, Caspita, Section Two, a distance of 109.89 feet to a 1/2 inch iron rebar set with plastic cap which reads "BASELINE INC" at the intersection of the zoning parcel line adopted by the City of Cedar Park City Council in Ordinance Z07-04-01-22-12.C of the City of Cedar Park Code of Ordinances with the west line of the 26.001 acre tract and the east line of Lot 2, Block A, Caspita, Section Two, and being the POINT OF BEGINNING; [Point of Beginning coordinates: Northing= 10147105.9500; Easting= 3087853.0506];

THENCE North 20°50'54" West (record - North 20°50'47" West), continuing along the west line of the 26.001 acre tract and the east line of Lot 2, Block A, Caspita, Section Two, passing at a distance of 475.38 feet a nail found for the northeast corner of Lot 2, Block A, Caspita, Section Two and the southeast corner of Lot 1, Block A, Caspita, Section Two, and continuing along the west line of the 26.001 acre tract and the east line of said Lot 1, Block A, Caspita, Section Two, for a total distance of 613.97 feet to a 1/2 inch iron rebar found for the northwest corner of the 26.001 acre tract, the northeast corner of Lot 1, Block A, Caspita, Section Two, and being in the south line of Lot 2, Lodge at Lakeline Village, Section II, a subdivision of record in Cabinet V, Slides 102-104 of the Plat Records of Williamson County, Texas and Doc. No. 2001072315 of the Official Public Records of Williamson County, Texas, from which a 5/8 inch iron rebar found for and angle point in the north line of Lot 1, Block A, Caspita, Section Two and the south line of said Lot 2, Lodge at Lakeline Village, Section II, bears South 69°28'10" West a distance of 194.65 feet (record - South 69°28'10" West a distance of 194.65 feet);

THENCE North 72°34'24" East (record - North 72°36'31" East), along the north line of the 26.001 acre tract and the south line of Lot 2, Lodge at Lakeline Village, Section II, a distance of 239.97 feet (record – 240.07 feet) to a 1/2 inch iron rebar found for the southeast corner of Lot 2, Lodge at Lakeline Village, Section II, the southwest corner of a remainder of a 237.24 acre tract of land conveyed to Becky, LTD. by instrument of record in Doc. No. 9500465 of the Official Records of Williamson County, Texas, same being an angle point in the north line of the 26.001 acre tract, and also being the west corner of said 0.30 of one acre tract;

THENCE along the north and east lines of the 0.30 of one acre tract and the southerly line of said remainder of a 237.34 acre tract the following three (3) courses:

1.  North 64°57'32" East a distance of 765.82 feet (record - North 66°09'05" East a distance of 765.77 feet) to a 1/2 inch iron rebar found;

2.  North 72°00'54" East a distance of 210.58 feet (record – North 73°12'40" East a distance of 210.75 feet) to a 1/2 inch iron rebar set with plastic cap which reads "BASELINE INC" for the northeast corner of the 0.30 of one acre tract;

3.  South 20°38'04" East a distance of 6.64 feet (record - South 19°41'05" East a distance of 6.64 feet) to an iron rebar found for the southeast corner of the 0.30 of one acre tract, the northeast corner of the 26.001 acre tract, and being the common northerly corner of Lots 133 and 134, Riviera Springs Subdivision, a subdivision of record in Cabinet B, Slides 167-169 of the Plat Records of Williamson County, Texas;

THENCE South 20°38'04" East (record – South 20°52'50" East), along the east line of the 26.001 acre tract and the west line of said Riviera Springs Subdivision, a distance of 975.74 feet (record – 975.92 feet) to a 1/2 inch iron rebar found for the southeast corner of the 26.001 acre tract, the northeast corner of said 1.081 acre tract, and being in the west line of Lot 121, Riviera Springs Subdivision;

THENCE South 22°03'51" East (record - South 17°56'29" East), along the east line of the 1.081 acre tract and the west line of Riviera Springs Subdivision, a distance of 70.32 feet (record – 70.00 feet) to a 1/2 inch iron rebar found for the southeast corner of 1.081 acre tract, the northeast corner of said 10.349 acre tract, and being in the west line of Lot 120, Riviera Springs Subdivision;

THENCE South 20°40'19" East (record - South 20°52'50" East), along the east line of the 10.349 acre tract and the west line of Riviera Springs Subdivision, a distance of 594.36 feet to a 1/2 inch iron rebar found for and angle point in the east line of the 10.349 acre tract, and being the common southerly corner of Lots 113 and 114, Riviera Springs Subdivision, and also being the being the common northerly corner of Lots 175 and 176, Riviera Springs Subdivision No. 2, a subdivision of record in Cabinet B, Slide 210 of the Plat Records of Williamson County, Texas;

THENCE South 21°12'07" East (record - South 20°52'50" East), along the east line of the 10.349 acre tract and the west line of said Riviera Springs Subdivision No. 2, a distance of 531.34 feet to a 1/2 inch iron rebar found for the southeast of the 10.349 acre tract, the northeast corner of Lot 1, Block B, Lakeline Commons Subdivision, a subdivision of record in Cabinet BB, Slides 112-114 of the Plat Records of Williamson County, Texas and Doc. No. 2005101156 of the Official Public Records of Williamson County, Texas, and being in the west line of Lot 181, Riviera Springs Subdivision No. 2, from which a 1/2 inch iron rebar found for an angle point in the east line of said Lot 1, Block B, Lakeline Commons Subdivision and being the southwest corner of Lot 184, Riviera Springs Subdivision No. 2, bears South 21°00'22" East a distance of 317.69 feet (record - South 20°59'04" East a distance of 317.66 feet);

THENCE South 69°00'31" West (record - South 69°01'09" West), along the south line of the 10.349 acre tract and the north line of Lot 1, Block B, Lakeline Commons Subdivision, a distance of 212.27 feet (record - 212.38 feet) to a 1/2 inch iron rebar found for the southwest of the 10.349 acre tract, the northwest corner of Lot 1, Block B, Lakeline Commons Subdivision, and being in the northeasterly right-of-way line of South Lakeline Boulevard, From which a 1/2 inch iron rebar found for a point of curvature in the west line of Lot 1, Block B, Lakeline Commons Subdivision and the northeasterly right-of-way line of South Lakeline Boulevard, bears South 38°40'19" East a distance of 125.43 feet (record - South 38°39'43" East a distance of 125.49 feet);

THENCE along the west line of the 10.349 acre tract and the northeasterly right-of-way line of South Lakeline Boulevard the following two (2) courses:

1.  North 38°41'53" West a distance of 702.26 feet (record - North 38°38'59" West a distance of 700.68 feet) to a 1/2 inch iron rebar found for a point of curvature;

2.  Along a tangential curve to the left, having a radius of 1045.00 feet (record - 1045.00 feet), an arc length of 9.21 feet, a delta angle of 00°30'17", and having a chord which bears North 38°57'02" West a distance of 9.21 feet to a calculated point at the intersection of said zoning parcel line adopted by the City of Cedar Park City Council in Ordinance Z07-04-01-22-12.C of the City of Cedar Park Code of Ordinances with the west line of the 10.349 acre tract and the northeasterly right-of-way line of South Lakeline Boulevard, from which a 1/2 inch iron rebar set with plastic cap which reads "BASELINE INC" for the northwest corner of the 10.349 acre tract and the southwest corner of the 1.081 acre

tract, bears along a tangential curve to the left, having a radius of 1045.00 feet (record - 1045.00 feet), an arc length of 364.55 feet, a delta angle of 19°59'17", and having a chord which bears North 49°11'49" West a distance of 362.71 feet;

THENCE North 48°46'49" East, crossing through the 10.349 acre tract and along the zoning parcel line adopted by the City of Cedar Park City Council in Ordinance Z07-04-01-22-12.C of the City of Cedar Park Code of Ordinances, a distance of 150.90 feet to a calculated point;

THENCE North 19°05'43" West, continuing through the 10.349 acre tract, crossing through the 1.081 acre tract, and crossing into the 26.001 acre tract, along the zoning parcel line adopted by the City of Cedar Park City Council in Ordinance Z07-04-01-22-12.C of the City of Cedar Park Code of Ordinances, a distance of 537.56 feet to a calculated point;

THENCE continuing through the 26.001 acre tract along the zoning parcel line adopted by the City of Cedar Park City Council in Ordinance Z07-04-01-22-12.C of the City of Cedar Park Code of Ordinances the following four (4) courses:

1.  South 83°17'52" West a distance of 177.96 feet to a 1/2 inch iron rebar set with plastic cap which reads "BASELINE INC";

2.  North 20°11'30" West a distance of 216.73 feet to a 1/2 inch iron rebar set with plastic cap which reads "BASELINE INC";

3.  South 67°35'44" West a distance of 677.69 feet to a 1/2 inch iron rebar set with plastic cap which reads "BASELINE INC";

4.  South 84°10'38" West a distance of 96.20 feet to the POINT OF BEGINNING.

This parcel contains 29.184 acres of land, more or less, out of the Rachel Saul Survey, Abstract No. 551 and the Richard Duty Survey, Abstract No. 183, both in Williamson County, Texas.

Bearing Basis: Texas State Plane Coordinate System, Central Zone, NAD 83/93 HARN.

J. SCOTT LASWELL
REGISTERED PROFESSIONAL LAND SURVEYOR
STATE OF TEXAS NO. 5583

## EXHIBIT "B"
## FINAL PLAT





{W0593672.9}

{W0593672.9}

STATE OF TEXAS
COUNTY OF WILLIAMSON

*(body text illegible)*

STATE OF TEXAS
COUNTY OF WILLIAMSON

STATE OF TEXAS
COUNTY OF WILLIAMSON

IN WITNESS MY HAND THIS 24th DAY OF SEPTEMBER, 2013 A.D.

STATE OF TEXAS
COUNTY OF WILLIAMSON

PLANNING AND ZONING COMMISSION APPROVAL

THE STATE OF TEXAS
THE COUNTY OF WILLIAMSON

PUBLIC WORKS DEPARTMENT STANDARD PLAT NOTES
REVISED AUGUST 28, 2012

CENTRAL NOTES

BASELINE LAND SURVEYORS, INC.

FINAL PLAT
LAKELINE AT OLD MILL
SUBDIVISION

SHEET
03 of 03

## EXHIBIT "C"
## OLD MILL ROAD EXTENSION



{W0593672.9}

22

# EXHIBIT "D"

## DEPICTION OF SALES TRAILER PARKING LOCATION



# APPENDIX B

# City of Cedar Park Code of Ordinances

Current through Part 1 of Supplement No. 25

This Code of Ordinances contains all ordinances deemed appropriate to be included as enacted through Ordinance CO46-14-05-08-C1 adopted 5/8/14.

## CHAPTER 16 TRANSPORTATION REGULATIONS

## ARTICLE 16.02 RIGHT-OF-WAY

ARTICLE 16.02 RIGHT-OF-WAY

### Sec. 16.02.005 Dedication of right-of-way

(a) If the director of planning determines that all or a portion of the right-of-way is needed to accommodate additional traffic expected to be generated by the proposed development, right-of-way shall be dedicated in accordance with the following standards:

(1) For a roadway subject to reserved right-of-way under which is internal to a proposed subdivision or development project, a total right-of-way width of up to one hundred fifty (150) feet shall be dedicated.

(2) For an existing or proposed roadway subject to reserved right-of-way which abuts a proposed subdivision or development project, up to fifty percent (50%) of the total right-of-way requirement (measured from the centerline established according to this section) shall be dedicated. If the total right-of-way width specified in the roadway plan equals or exceeds one hundred-fifty (150) feet, no more than seventy-five (75) feet of reserved right-of-way width is required to be dedicated.

(b) Additional dedication of right-of-way may be required for streets not subject to reserved right-of-way where the streets do not meet the standards set forth in the Transportation Criteria Manual or are necessary to accommodate traffic generated by the proposed development.

(c) With the approval of the director of planning, dedication required at one stage of the development process may be deferred until a later stage, including but not limited to building permit, provided that all dedication requirements are completed prior to the release of the subsequent application.

(d)     In addition to the dedication of right-of-way, the city may require the construction of a roadway improvement or may assess a fee instead of requiring construction of a roadway improvement to offset the traffic effects generated by a proposed development.

(Ordinance CO03-06-01-26-3C, sec. 2, adopted 1/26/06)