COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS

| | § | |
|---|---|---|
| THE CITY OF EL PASO, TEXAS, | | No. 08-06-00332-CV |
| A MUNICIPAL CORPORATION, | § | |
| | | Appeal from |
| Appellant, | § | |
| | | 171st District Court |
| v. | § | |
| | | of El Paso County, Texas |
| TRUETT L. MADDOX, D.D.S. and | § | |
| BERRY H. EDWARDS, TRUSTEE, | | (TC # 92-14046) |
| | § | |
| Appellees. | | |

## O P I N I O N

The City of El Paso, Texas, a Municipal Corporation, brings this interlocutory appeal from an order denying its plea to the jurisdiction. We sustain the City's sole issue for review, reverse the trial court's order denying the plea to the jurisdiction, and render judgment dismissing the underlying cause for want of subject matter jurisdiction.

### FACTUAL SUMMARY

This is the third appeal arising from a suit brought by Appellees, Dr. Truett L. Maddox, D.D.S. and Berry H. Edwards, Trustee, against the City and other defendants[1] who are not parties to this appeal. *See Edwards v. Mesa Hills Mall Company Limited Partnership*, 186 S.W.3d 587 (Tex.App.--El Paso 2006, no pet.); *Maddox v. City of El Paso, Texas*, No. 08-98-00409-CV, 2000 WL 799070 (Tex.App.--El Paso June 22, 2000, pet. denied). Although some of the basic facts of

---

[1] Appellees also sued Mesa Hills Mall Company, L.P., Simon Property Group, L.P., Melvin Simon, and Herbert Simon (collectively referred to as the Simon Defendants).

the dispute have been set forth in our prior opinions, it is necessary to outline the pertinent factual allegations contained in the live pleading[2] and the evidence adduced in connection with the City's plea to the jurisdiction in resolving the jurisdictional issue presented.

According to their pleadings, Dr. Maddox and Edwards own three tracts of property totaling 15.229 acres (referred to collectively as the Property) on the west side of El Paso.[3] Dr. Maddox acquired the first tract consisting of 12.5315 acres in 1972 (the Surplus Property), the second tract consisting of .5505 acre in 1978 (the Trade Property), and the third tract consisting of 2.147 acres in 1979 (the Abutting Property). He purchased the tracts for the purpose of commercial, office, and residential development. One of the tracts abuts Park West Unit 3 on which Sunland Park Mall was built.

When Dr. Maddox acquired the Surplus Property in 1972, it did not have access to any public street or right of way or, in other words, it was landlocked. The following year at Dr. Maddox's request, the City re-zoned the Surplus Property to Apartment/Office (A/O). Three years later, on October 15, 1976, Mesa Hills Mall Company L.P. acquired the 79.168 acre tract which was platted into Park West Unit 3, a single lot subdivision with no interior streets. Dr. Maddox acquired the Abutting Property in 1979 with the knowledge that Mesa Hills Mall Company had purchased the 79.168 acre tract for the purpose of shopping center development, but he denies having knowledge that the property had been platted into Park West Unit 3. He expected that his acquisition of the Abutting Property would ensure that his landlocked property would eventually gain access to a public street through Park West Unit 3. He based this belief on a 1974 Subdivision Ordinance and

---

[2] The trial court entered an order that the Twelfth Amended Petition is the live pleading.

[3] Dr. Maddox owns a 60 percent undivided interest in the property and Edwards owns a 40 percent undivided interest.

City policy which required a subdivider to provide access to adjoining unplatted areas. Appellees allege in their petition that neither Mesa Hills Mall Company nor the City disclosed during the subdivision platting process between 1978 and 1987 that Mesa Hills intended to sell lots in Park West Unit 3 without street frontage.

Upon learning that the Property would not be provided street access via the Park West Unit 3 development, Appellees unsuccessfully attempted to negotiate access with Mesa Hills Mall Company and the other Simon Defendants. In 1992, the Appellees asked the City to enforce the 1974 ordinance against Mesa Hills Mall Company, and the City Council instructed the City Attorney to do so. Shortly thereafter, the City rescinded its prior order and amended the 1974 ordinance to eliminate the requirement for public streets in a shopping center with internal lots so long as access between lots was provided with reciprocal easements.

Appellees filed suit against the City in 1992, alleging that the amendment to the 1974 Subdivision Ordinance and its retroactive application to Park West Unit 3 constituted a taking because their property has been rendered unsaleable and of no value. The Simon Defendants were later added as defendants, but the trial court granted summary judgment in their favor on both the constitutional taking and the fraud claims asserted against them. *See Edwards*, 186 S.W.3d at 591-92 (affirming summary judgment). The only claims remaining in the case are the constitutional taking claims asserted against the City.[4]

In 2004, the City filed a plea to the jurisdiction alleging that the trial court lacked jurisdiction because Appellees' claim of a regulatory taking is unripe. The trial court conducted a hearing on the

---

[4] On October 19, 2004, the trial court granted summary judgment in favor of the City of El Paso with respect to all of Appellees' claims except for the takings claims asserted under Article I, Section 17 of the Texas Constitution, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983. The limited record before us does not reflect the nature of the other claims asserted against the City.

plea to the jurisdiction and both parties relied on evidence attached to their responsive pleadings. The City presented the affidavit of Rodolfo Valdez, a city employee and custodian of city records. Valdez averred that at the time the ordinance was amended, there was no active, pending plat, subdivision application, or other development application submitted to or filed with the City regarding the Property, and there has not been a rejection or denial by the City of any plat, subdivision application, or other development application regarding the Property. Nor has a variance been sought with respect to the application of the amended ordinance to the Property. There has been no decision or determination by the City Council concerning the platting or development of the Property. Valdez also stated that "there has not been any final decision or determination by the City Council of the City concerning the platting or development of the Property." According to Valdez's affidavit, a plat was filed for some or all of the Property in September 1989, to be known as the "Commerce Park" subdivision. The City Plan Commission approved the plat in November 1989 subject to certain terms and conditions, including a name change. The name of the subdivision was later changed to Galleria Plaza subdivision. In 1991, the platting process for the Galleria Plaza subdivision was "actually or constructively abandoned" at a preliminary stage. No action had been taken seeking approval from the City for platting of the Galleria Plaza subdivision. According to Valdez, the City owns significant portions of land which border or are "in the neighborhood of" the Property, but the City has not had the opportunity to formally deliberate, consider, and decide, in the ordinary administrative process, any method of providing alternative means of access to the Property because Appellees filed suit shortly after the ordinance was amended rather than making any effort to file a plat, subdivision application, or other development application with the City, or seek a variance.

Appellees relied on evidence[5] that when their property was re-zoned in 1973, the City imposed a requirement that they show ingress and egress to obtain building permits. Appellees also presented evidence that in 1992, as alleged in their petition, they made a complaint to the City Council regarding Park West Unit 3's non-compliance with the subdivision ordinance which required that access be provided to the Property, and in response, the City Council ordered the City Attorney to enforce the ordinance. Subsequently, however, the City Council rescinded its directive to enforce the ordinance, and it instead amended the ordinance to eliminate the requirement which would have required that Park West Unit 3 provide access to the Property. Following the hearing, the court denied the plea to the jurisdiction and the City filed notice of accelerated appeal.

## PLEA TO THE JURISDICTION

In its sole issue for review, the City complains that the trial court erred by denying its plea to the jurisdiction because Appellees' constitutional taking claim is not ripe because they have not (1) submitted a development plan with the City, which was rejected; and (2) sought a variance, which was denied. Appellees concede that they did not file a development plan after the regulation was retroactively applied to Park West Unit 3, but contend that taking these actions would have been futile. Further, they argue that under the unique facts of this case, the City's actions in withdrawing its order to enforce the 1974 Subdivision Ordinance and amending the ordinance in the face of Appellees' request to enforce the ordinance, constituted a final decision applying the ordinance to the Property.

### *Standard of Review*

A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Bland*

---

[5] Appellees attached documents and deposition excerpts to its response. At the hearing, the City objected to the evidence but did not obtain a ruling.

*Independent School District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law. *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Ripeness is an element of subject matter jurisdiction. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). The issue whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law which is reviewed *de novo*. *Miranda*, 133 S.W.3d at 226. Similarly, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law subject to *de novo* review. *Id.* In some cases, however, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *Id.* In that circumstance, the trial court cannot grant the plea to the jurisdiction, and the fact issue must be resolved by the fact finder. *Id.* at 227-28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard generally mirrors that of a summary judgment under TEX.R.CIV.P. 166a(c). *Id.*

The City's plea to the jurisdiction challenges the existence of jurisdictional facts and it presented evidence in support of its assertion that the court lacked subject matter jurisdiction. Appellees filed a response and also presented evidence in support of their claim that their takings claims were ripe. Neither party asserted that there were fact issues which required resolution by a fact finder before the jurisdictional issue could be resolved. By determining that it had subject matter jurisdiction, the trial court impliedly determined that there were no fact issues which required resolution. Neither party submits on appeal that there are disputed fact issues. We are presented with a plea to the jurisdiction in which undisputed evidence implicates both subject matter jurisdiction and the merits of the case. In resolving the jurisdictional issue presented, we consider relevant evidence submitted by the parties as the trial court is required to do. *Id.* at 227.

*Regulatory Taking*

Article 1, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ." TEX.CONST. art. 1, § 17. Inverse condemnation occurs when property is taken for public use without proper condemnation proceedings and the property owner attempts to recover compensation for that taking. *City of Abilene v. Burk Royalty Company*, 470 S.W.2d 643, 646 (Tex. 1971); *Park v. City of San Antonio*, 230 S.W.3d 860, 867 (Tex.App.--El Paso 2007, pet. denied). To state a cause of action for inverse condemnation under the Texas Constitution, a plaintiff must allege (1) an intentional governmental act; (2) that resulted in his property being taken, damaged, or destroyed; (3) for public use. *General Services Commission v. Little-Tex Insulation Company, Inc.*, 39 S.W.3d 591, 598 (Tex. 2001); *Park*, 230 S.W.3d at 867. Takings are classified as either physical or regulatory. *Mayhew*, 964 S.W.2d at 933. Physical takings occur when the government authorizes an unwarranted physical occupation of an individual's property. *Id.* A compensable regulatory taking occurs when a governmental agency imposes restrictions that either deny a property owner all economically viable use of his property or unreasonably interferes with the owner's right to use and enjoy the property. *City of Dallas v. Blanton*, 200 S.W.3d 266, 271 (Tex.App.--Dallas 2006, no pet.), *citing Mayhew*, 964 S.W.2d at 935.

*Ripeness*

For a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulation to the property at issue. *Mayhew*, 964 S.W.2d at 929, *citing Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 734, 117 S.Ct. 1659, 1665, 137 L.Ed.2d 980 (1997) and *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116, 87 L.Ed.2d 126 (1985). A final decision usually requires both a rejected

development plan and the denial of a variance from the controlling regulation. *Mayhew*, 964 S.W.2d at 929, *citing Hamilton Bank*, 473 U.S. at 187-88, 105 S.Ct. at 3117. However, futile variance requests or re-applications are not required. *Mayhew*, 964 S.W.2d at 929. The term "variance" is "not definitive or talismanic;" it encompasses "other types of permits or actions [that] are available and could provide similar relief." *Id.* at 930, *quoting Southern Pacific Transportation Company v. City of Los Angeles*, 922 F.2d 498, 503 (9th Cir. 1990), *cert. denied*, 502 U.S. 943, 112 S.Ct. 382, 116 L.Ed.2d 333 (1991). The variance requirement is therefore applied flexibly in order to serve its purpose of giving the governmental unit an opportunity to "grant different forms of relief or make policy decisions which might abate the alleged taking." *Id.*, *quoting Southern Pacific*, 922 F.2d at 503.

### *Appellees' Regulatory Taking Claim*

The nature of Appellees' claim complicates the ripeness inquiry because it is not the typical regulatory taking claim arising when some sort of regulation is applied directly to property with a resulting loss of value. Instead, Appellees' claim is based on allegations that (1) the City's refusal to enforce the 1974 Subdivision Ordinance against an abutting property, Park West Unit 3, and (2) the City's amendment of the Subdivision Ordinance and its retroactive application of the amended ordinance to Park West Unit 3, has resulted in a denial of access to their Property and a loss of all value. Thus, the claim is based on an indirect application of a regulation to their property. Although Appellees' claim is atypical, we conclude that it involves a regulatory taking and they must show that there has been a final decision applying the regulation to their property

### *The Ripeness Issue*

Appellees first argue that the City made a final decision when it refused to enforce the 1974 Subdivision Ordinance against Park West Unit 3 and it amended the ordinance so that Park West

Unit 3 was not required to provide access to the abutting property. It may well be a final decision with respect to Park West Unit 3, but to show that their regulatory taking claim is ripe, Appellees must demonstrate that the City has made a final decision applying the regulation to *the Property*. The evidence does not support such a conclusion.

It is undisputed that the City has not rejected a development plan for the Property. The evidence shows that Appellees abandoned a development plan for the Property in 1991 and they did not take any action seeking approval from the City for platting of the Galleria Plaza subdivision. This abandonment of the development plan occurred before the City's alleged refusal to enforce the 1974 Subdivision Ordinance and the amendment of that ordinance in 1992. Since that time, Appellees have not taken any steps to re-submit a development plan or seek a variance from the amended ordinance. Instead, they filed suit shortly after the City amended the ordinance. As a result of Appellees' failure to submit a development plan or seek a variance, the City has not been given an opportunity to consider, in the ordinary administrative process, Appellees' complaints about a lack of access to their landlocked property. During that process, the City could consider alternative means of providing access to the Property. Based on these facts, we find that the City has not made a final decision applying the amended ordinance to the Property.

Appellees also claim that it would have been futile for them to submit a development plan, plat the Property, or seek a variance from the amended ordinance. In support of their argument that the futility exception applies under the facts of this case, Appellees cite *Hallco Texas Inc. v. McMullen County*, 221 S.W.3d 50 (Tex. 2006) and *Mayhew*.

In *Mayhew*, the town initially permitted residential development at a density of 3.6 units per acre, but the ordinance was amended in response to septic tank failures to require a one-acre minimum lot size. *Mayhew*, 964 S.W.2d at 925. Even though sanitary sewer facilities were later

made available, the town did not repeal the one-acre minimum lot requirement. *Id.* The Mayhews began meeting with town officials seeking permission to proceed with a planned development with a density which exceeded the one-unit-per acre zoning requirement, and they told the town officials that a planned development would not be feasible under the one-unit-per-acre zoning. *Id.* at 925-26. The town amended its zoning ordinances to allow, upon council approval, planned developments with densities in excess of one unit per acre. *Id.* at 926. After spending more than $500,000 on studies and evaluative reports, the Mayhews submitted their planned development proposal to the town. *Id.* The proposal was based on a density of over three units per acre. *Id.* While the planning and zoning commission was reviewing the application, the town council passed a moratorium on planned developments. *Id.* The commission recommended denial of the Mayhew's proposal, stating a preference for a less dense use of the property. *Id.* The town council appointed a negotiating committee which met with the Mayhews. *Id.* Both sides tentatively agreed to a compromise development of 3,600 units. *Id.* At a meeting with the town council, the Mayhews told the council that anything less than approval for 3,600 units would be considered an outright denial. *Id.* The town council again voted to deny the Mayhews' development proposal and the town canceled a meeting to reconsider the planned development request. *Id.* The Mayhews subsequently filed suit alleging, among other things, that the town's refusal to approve the planned development was a taking of their property. *Id.* The trial court granted summary judgment on behalf of the town with respect to this claim, but the Dallas Court of Appeals reversed concluding that material fact questions existed as to whether the town violated the Mayhews' rights under the state and federal constitutions. *Id.* Upon remand, the case was tried to the court. *Id.* at 927. The district court concluded that the case was ripe for adjudication and that the town's decision to deny the application for the planned development was an unconstitutional taking under both the federal and state

constitutions. *Id.* The court of appeals reversed the district court's judgment and dismissed the Mayhews' claims, holding that none of the claims was ripe for review. *Id.* In the Supreme Court, the town argued that the Mayhews' claims were not ripe because they submitted only one planned development application and did not thereafter reapply for development or submit a variance. *Id.* at 931. Although the failure to reapply or seek a variance normally would be fatal to the ripeness of the Mayhews' claims, the Supreme Court found that, under the unique facts of the case, the Mayhews' planned development application and amended request for 3,600 units were sufficient, and any further applications would have been futile. *Id.* The court based its decision on the evidence showing that the Mayhews expended over $500,000 preparing and developing the application, they presented the initial proposal based on a density of over three units per acre, they engaged in negotiations with the town for over a year after the first proposal was rejected, and they presented a modified proposal which was subsequently rejected. *Id.* The instant case is factually distinguishable. In *Mayhew*, the town rejected the development plan. Here, Appellees abandoned their original development plan and they have not submitted a plan since the ordinance was amended. In short, the City has not rejected a development plan submitted by Appellees.

In *Hallco Texas*, Hallco purchased property near a reservoir with the intent of operating a non-hazardous industrial waste landfill, which required a permit from the Texas Commission on Environmental Quality. 221 S.W.3d at 52. Shortly after Hallco purchased the property, the McMullen County Commissioners Court adopted a resolution expressing opposition to the proposed use as a potential hazard to local water supplies. *Id.* at 53. Despite the opposition, Hallco filed its application with TCEQ. *Id.* McMullen County subsequently passed an ordinance banning the disposal of solid waste within three miles of the reservoir but allowed disposal in other areas provided applicable state requirements were satisfied. *Id.* Hallco challenged the ordinance by filing

suit in federal district court and it filed a parallel proceeding in state court. *Id.* at 53-54. The federal court dismissed without prejudice Hallco's claim alleging an unconstitutional taking in violation of the Fifth Amendment to the United States Constitution, holding that to ripen its federal takings claim, Hallco first had to seek compensation through procedures the state had established. *Id.* at 54. A week after the federal court's dismissal, the County moved for summary judgment in state court on various grounds. *Id.* The court of appeals affirmed the trial court's judgment, holding that Hallco's takings claim failed because it did not have a cognizable property interest of which the government could deprive it. *Id.*[6] Hallco did not appeal that decision. *Id.* at 55. More than two years later, Hallco submitted a request for a variance to the McMullen County Commissioners Court but offered no changes to its proposed landfill. *Id.* The commissioners heard a presentation on the variance request, but did not take any action. *Id.* Two months later, Hallco filed suit alleging that the county's denial of the variance request constituted a taking under Article 1, Section 17 of the Texas Constitution. *Id.* The county moved for summary judgment on all of Hallco's claims on various grounds, including that all of Hallco's claims were barred by *res judicata* because they were or could have been raised in the first state lawsuit (*Hallco I*). *Id.* The trial court again granted the county's motion without specifying the grounds, and the court of appeals affirmed. *Id.* at 55-56.[7] To avoid the County's *res judicata* argument, Hallco argued that its takings claim was not ripe in *Hallco I. Id.* at 58-59. The Supreme Court addressed the ripeness argument in Section IIIA of its opinion, but only four of the justices joined this part of the opinion. *Id.* at 58. The court found that the ordinance at issue was not subject to discretionary application or variance and it prohibited

---

[6] *Hallco Texas, Inc. v. McMullen County, Texas*, 1997 WL 184719, *2, 3 (Tex.App--San Antonio April 16, 1997, no pet.)(not designated for publication)("*Hallco I*").

[7] *Hallco Texas, Inc. v. McMullen County*, 94 S.W.3d 735 (Tex.App.--San Antonio 2002, no pet.)("*Hallco II*").

precisely the use Hallco intended to make of the property. *Id.* at 60. Thus, Hallco's taking claim was ripe upon enactment of the ordinance and *res judicata* applied. *Id.* The instant case is distinguishable because the ordinance in question does not prohibit Appellees' intended use of the property. Further, the City has the discretion to grant a variance.

We conclude that the City has not been given an opportunity to make a final decision on Appellees' access to its property and Appellees have not presented evidence establishing that submitting a development plan or seeking a variance would have been futile. Accordingly, we reverse the order of the trial court denying the City's plea to the jurisdiction and we render judgment dismissing Appellees' taking claims without prejudice.

September 11, 2008

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., concurs in the judgment