ACCEPTED
03-15-00259-CV
7162333
THIRD COURT OF APPEALS
AUSTIN, TEXAS
9/30/2015 11:47:56 AM
JEFFREY D. KYLE
CLERK

# No. 03-15-00259-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

9/30/2015 11:47:56 AM

JEFFREY D. KYLE
Clerk

IN THE
THIRD COURT OF APPEALS
AUSTIN, TEXAS

---

BECKY, LTD.,
*Appellant*

v.

THE CITY OF CEDAR PARK, STEPHEN THOMAS, MATT POWELL, MITCH FULLER, LYLE GRIMES, LOWELL MOORE, JON LUX, AND DON TRACY,
*Appellees*

---

ON APPEAL FROM THE
126TH JUDICIAL DISTRICT COURT,
TRAVIS COUNTY, TEXAS

---

## REPLY BRIEF OF APPELLANT

---

ELIZABETH G. BLOCH
State Bar No. 02495500
Heidi.bloch@huschblackwell.com
Husch Blackwell LLP
111 Congress, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (fax)

LEONARD B. SMITH
State Bar No. 18643100
lsmith@leonardsmithlaw.com
P.O. Box 684633
Austin, Texas 78768
(512) 914-3732
(512) 532-6446 (fax)

*Attorneys for Becky, Ltd.*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

REPLY TO APPELLEES' STATEMENT OF FACTS ............................................1

SUMMARY OF THE REPLY .................................................................2

ARGUMENT AND AUTHORITIES ............................................................3

I. The trial court has subject-matter jurisdiction over Becky's ultra vires claims against the individual defendants in their official capacities. ..............3

    A. Orderly development of subdivisions is a critical municipal function. ............................................................................4

    B. The City Council effectively granted a variance to the City's subdivision ordinances without the authority to do so. .........................6

    C. The City Council had no discretion to effectively grant a variance from its subdivision ordinance requirements. .......................7

    D. Declaratory relief against the individual City Council members is appropriate. ...............................................................10

II. The UDJA waives the City's immunity under these circumstances. ............12

III. Becky has standing to assert its claims. .........................................14

IV. Becky's claims are ripe. ............................................................18

V. Becky's claims are not moot. ......................................................21

CONCLUSION .........................................................................23

CERTIFICATE OF COMPLIANCE ........................................................24

CERTIFICATE OF SERVICE .............................................................24

# INDEX OF AUTHORITIES

## CASES

*Alexander Oil Co. v. City of Seguin,*
    825 S.W.2d 434 (Tex. 1991)............................................................................11

*Allen v. Wright,*
    468 U.S. 737 (1984).......................................................................................16

*Brandon v. Holt,*
    469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).......................................13

*City of El Paso v. Heinrich,*
    284 S.W.3d 366 (Tex. 2009)................................................................. 3, 10, 13

*City of El Paso v. Maddox*,
    276 S.W.3d 66 (Tex. App.—El Paso 2008, pet, denied)............................. 18, 19

*City of Houston v. Little Nell Apts.*,
    424 S.W.3d 640, 647 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) ..........3

*City of Houston v. Williams,*
    353 S.W.3d 128 (Tex. 2011).............................................................................22

*City of McKinney v. Hank's Restaurant Group, L.P.*,
    412 S.W.3d 102, 111-112 (Tex. App.—Dallas 2013, no pet.) ..........................12

*City of Round Rock v. Smith,*
    687 S.W.2d 300 (Tex. 1985)...........................................................................4, 5

*DaimlerChrysler Corp. v. Inman,*
    252 S.W.3d 299 (Tex. 2008)............................................................................16

*Heckman v. Williamson Cnty.,*
    369 S.W.3d 137 (Tex. 2012)............................................................................16

*Kentucky v. Graham,*
    473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)....................................13

*Lake Medina Cons. Soc. v. Tex. Nat. Res. Cons. Comm'n*,
    980 S.W.2d 511, 513-15 (Tex. App.—Austin 1998, pet, denied).....................15

*Lombardo v. City of Dallas,*
    124 Tex. 1, 73 S.W.2d 475 (1934)......................................................................4

*Satterfield & Pontikes Constr., Inc. v. Tex. S. Univ.,*
    2015 WL 4760209 (Tex. App.—Houston [1st Dist.] August 13, 2015,
    pet. filed) ........................................................................................................11

*Save Our Springs Alliance, Inc. [SOS] v. City of Austin,*
    149 S.W.3d 674 (Tex. App.—Austin 2004, no pet.) ....................................21, 22

*Save Our Springs [SOS] Alliance, Inc. v. City of Dripping Springs,*
    304 S.W.3d 871 (Tex. App.—Austin 2010, pet. denied) ..................................14

*Schecter v. Wildwood Developers, LLC,*
    214 S.W.3d 117 (Tex. App.—El Paso, no pet.).................................................15

*South Tex. Water Auth. v. Lomas,*
    223 S.W.3d 304 (Tex. 2007)............................................................................18

*Stop the Ordinances Please v. City of New Braunfels,*
    306 S.W.3d 919 (Tex. App.—Austin 2010, no pet.) ........................................17

*Tex. A & M Univ. Sys. v. Koseoglu,*
    233 S.W.3d 835 (Tex. 2007)............................................................................13

*Texas Department of Transp. v. Sefzik,*
    355 S.W.3d 618 (Tex. 2011)............................................................................12

*Texas Logos, LP v. TxDOT,*
    241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.) ................................. 10, 11

*Texas Lottery Commission v. First State Bank of DeQueen,*
    325 S.W.3d 628 (Tex. 2010)..............................................................................3

*Texas Nat. Reserve Conservation Commission v. IT-Davy,*
    74 S.W.3d 849 (Tex. 2002)..............................................................................10

## OTHER AUTHORITIES

City of Cedar Park Home Rule Charter § 7.04(a).......................................................4

Code of Ordinances § 12.06.002.................................................................................5

Code of Ordinances § 12.12.003.................................................................................5

Code of Ordinances § 12.15.001(1) ...................................................................5

Code of Ordinances §§ 12.03.004(a), (b) ........................................................5, 6

Code of Ordinances §12.15.002(a) ..................................................................5

Ordinance § 16.02.005 .................................................................................8, 9

**STATUTORY AUTHORITIES**

TEX. GOV'T CODE Chapter 551 .......................................................................22

TEX. LOCAL GOV'T CODE § 212.006(a) ......................................................... 4, 22

## REPLY TO APPELLEES' STATEMENT OF FACTS

Becky agrees that "this case is about a future road to a vacant lot," although if the City Council[1] had not engaged in unauthorized conduct, the road to Becky's tract would have been built by now. Planning future roads to vacant tracts of land is a critical part of a city's subdivision planning process, and the orderly development of the City's infrastructure, including roadways that connect one subdivision to the next, is one of the most important municipal functions. It is not true, as the city contends, that "Becky wants the City to build a road to the Becky tract."[2] To the contrary, the City's own subdivision ordinances require that developers such as Milestone either build or pay for the construction of roadways contained in the City's master plan that are within their subdivisions. In that sense, it would be more accurate to say that the City wants Becky to build a road on Milestone's tract.

The road at issue here, the Old Mill Road Extension, is in the City's master roadway plan as a "residential collector" planned roadway.[3] Consistent with this roadway plan, Milestone dedicated to the City a right of way for Old Mill Road in

---

[1] The "City Council" refers to the individual defendants, in their official capacity as members of the City of Cedar Park City Council. The "City" will refer collectively to the City of Cedar Park and the City Council, except where a distinction is expressly stated.

[2] Appellees' Br. at 4.

[3] CR 213, a more recent and legible copy of which is attached hereto as Appendix A, designates Old Mill Road as road number 32 on the City's roadway plan. *See also* http://www.cedarparktexas.gov/modules/showdocument.aspx?documentid=2979.

1

its Development Agreement.[4] The Agreement, however, contrary to the City's ordinances, grants Milestone an exemption from completing or paying for construction of the entirety of the road within one year. Instead, the Agreement requires Milestone to complete "Phase 1" of Old Mill Road (*See* map on page 1 of Becky's opening brief) without any time deadline, and worse, it does not require Milestone to complete, timely or otherwise, "Phase 2" of the road,[5] leaving Becky's tract indefinitely stranded.

## SUMMARY OF THE REPLY

Becky's suit is a challenge to the City's authority to grant Milestone, through the Development Agreement, an exemption or variance to the City's own subdivision ordinance requirements. The suit alleges *ultra vires* conduct by the City Council members, thus invoking the court's subject matter jurisdiction over those defendants. Since construction of the City's ordinances is a necessary component of Becky's *ultra vires* claim, Becky also seeks declaratory relief regarding the City's ordinances under the Uniform Declaratory Judgments Act (UDJA), which requires that the City be made a party to the suit. This court therefore has subject matter jurisdiction over both the individual defendants and the City. Alternatively, even if the City is immune, the suit against the individual City Council members must be allowed to proceed.

---

[4] I CR 198; Development Agreement at ¶ 2.
[5] *See* I CR 199; Development Agreement at ¶ 3.

**ARGUMENT AND AUTHORITIES**

**I.    The trial court has subject-matter jurisdiction over Becky's *ultra vires* claims against the individual defendants in their official capacities.**

The City does not dispute that *ultra vires* claims against governmental officials in their official capacities are an exception to immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). Instead, the City contends that Becky's claims do not fall within that exception because the City Council's actions were discretionary. Deciding this issue necessarily requires a construction of the applicable ordinances, to determine whether Becky's claims assert conduct by the City Council that was outside of their discretion. *See City of Houston v. Little Nell Apts.*, 424 S.W.3d 640, 647 (Tex. App.—Houston [14th Dist.] 2014, pet. filed) ("this court will need to construe the ordinance … to determine whether the facts as pleaded demonstrate the ultra vires nature of [plaintiff's] alleged actions").

The same rules that govern statutory construction apply to the construction of municipal ordinances. *Id.* at 648. This includes examining the City's words in context of the ordinances as a whole and not considering words or parts of the ordinance in isolation. *Id.* at 649 (citing *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 636 (Tex. 2010)). The City's ordinances as a whole demonstrate the importance of the orderly development of its subdivisions. They also demonstrate the clear demarcation of authority between the City Council and the City's Planning Commission, as discussed in Becky's opening brief.

### A. Orderly development of subdivisions is a critical municipal function.

As the Texas Supreme Court has noted:

> The police power [of a city] is a grant of authority from the people to their governmental agents "to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety." *Lombardo v. City of Dallas,* 124 Tex. 1, 73 S.W.2d 475, 479 (1934). The purpose of plat approval is to ensure that subdivisions are safely constructed and to *promote the orderly development of the community*. Plat approval protects future purchasers from inadequate police and fire protection, inadequate drainage, and insures sanitary conditions.

*City of Round Rock v. Smith,* 687 S.W.2d 300, 302 (Tex. 1985) (emphasis added).

To this end, Chapter 212 of the Local Government Code gives cities regulatory power over the subdivision of land. Section 212.006(a) places authority to approve plats, under the subchapter dealing with regulation of subdivisions, squarely on the "municipal planning commission," with some exceptions not applicable here. TEX. LOCAL GOV'T CODE § 212.006(a).

Consistent with this statutory directive, the City's Code of Ordinances vest exclusive authority over platting and subdividing of land in the Planning Commission. City of Cedar Park Home Rule Charter § 7.04(a). Also consistent with this statutory directive, the City's subdivision ordinances (found in Chapter 12 of the City's Code of Ordinances),[6] place sole authority to grant variances from

---

[6] *See* http://z2.franklinlegal.net/franklin/Z2Browser2.html?showset=cedarparkset

4

the terms of its subdivision regulations squarely and exclusively with the Planning Commission. Code of Ordinances §§ 12.03.004(a), (b).

The City's Code of Ordinances also mirror the sentiment announced in *City of Round Rock* that its subdivision development be orderly:

- The provisions of this chapter … are designed and intended to insure that, for all subdivisions of land within the jurisdiction of the city, all improvements as required herein are installed in a timely manner in order that: … the city can provide for the orderly and economical extension of public facilities and services (Code of Ordinances § 12.15.001(1));

- … the applicant requesting final plat approval shall, within the time period for which the final plan has been conditionally approved by the city: (1) Construct all improvements as required by this chapter, … or (2) Provide a surety instrument guaranteeing construction of all improvements required by this chapter. (Code of Ordinances §12.15.002(a));

- The final plan provides detailed graphic information … indicating property boundaries, easements, streets, utilities … (Code of Ordinances § 12.06.001);

- The final plat shall include the entire tract intended to be developed at one (1) time, and shall contain or have attached thereto: … (2) A location map showing the relation of the subdivision to streets and other prominent features. … (5) The lines and names of all proposed streets…. (Code of Ordinances § 12.06.002);

- All transportation improvements including streets … shall be designed in accordance with the … transportation master plan …. (Code of Ordinances § 12.12.003);

A developer's final plat, such as Milestone's here, is essentially an agreement with the City that it will construct (or provide security for construction of) all of the improvements shown on the plat in a timely manner or suffer expiration of its final plat. Milestone's final plat includes Old Mill Road, and expressly dedicates a right

5

of way for that road to the City from one end to the other of Milestone's tract, which abuts Becky's tract. The City's Ordinances limit the time for completion of all improvements designated on a final plat to one year after plat approval. Code of Ordinances § 12.15.003(c). Failure to timely complete the improvements automatically results in plat expiration. Code of Ordinances § 12.15.003(d). The threat of plat expiration encourages the timely and orderly development of the subdivision and all infrastructure shown on the subdivision plat.

As noted above, Old Mill Road was designated on the City's roadway plan as a "collector street." The City's Ordinances define the purpose of such streets: "The purpose of collector streets is to convey traffic from intersecting local streets and to expedite the movement of traffic to an arterial street or other collector street." Code of Ordinances § 12.12.003(6)(B). Here, the City Council's unauthorized grant of what amounted to a variance to Milestone completely defeated the purpose of the City's own stated purposes and goals.

B.    **The City Council effectively granted a variance to the City's subdivision ordinances without the authority to do so.**

The City points out that the term "variance" is a term of art, and argues that "Becky has not alleged any facts in its pleading that would demonstrate that the City Council approved a 'variance' as that term is generally understood."[7] But that's exactly Becky's point: The City never approved an actual "variance"

---

[7] Appellees' Br. at 8.

because Milestone never applied for a variance, did not even attempt to meet the requirements for granting a variance, and was not granted a variance from the only entity within the City's government authorized to grant one—the Planning Commission.

Milestone could only have been exempted from its requirement to timely complete or pay for the subdivision infrastructure shown on its plat, including Old Mill Road, by going through the administrative process of obtaining an actual variance from the Planning Commission. It did not do so. Instead, the City Council—an entity without authority to grant a variance—purported to do just that by contract. The Development Agreement between the City and Milestone effectively granted Milestone a variance from an entity unauthorized to grant one, and without the required showing that would support a variance or exemption from the subdivision ordinance requirements. That portion of the Development Agreement is therefore void as an *ultra vires* act of the City Council, purporting to act on behalf of the City, but without the requisite authority.

### C. The City Council had no discretion to effectively grant a variance from its subdivision ordinance requirements.

The City has no response at all to the keystone of Becky's appeal—that under the City's Charter and ordinances, only the Planning Commission, through an administrative process, can do what the City Council purported to do by contract with a private entity. Instead, the City points to a previously undiscussed

7

and irrelevant ordinance relating to dedication of rights of way, suggesting that the City had discretion whether to require completion of Old Mill Road. This argument fails for two reasons. First, the right of way provision relied upon by the City does not allow the City discretion to forgive both completion of the road and payment for its construction. Second, to the extent the City has discretion to waive the build-or-pay option, it could only do so through action by the Planning Commission.

The City argues that Ordinance § 16.02.005 gives the City discretion to require construction of a roadway improvement or not. Ordinance § 16.02.005 is entitled "Dedication of Right of Way," and it addresses when rights of way may be required by the City for streets and roads. The dedication of a right of way for Old Mill Road, however, is not at issue because the City did not waive dedication of that right of way. Section 16.02.005(a) addresses when a right of way must be dedicated, once the director of planning determines that all or a portion of the right of way is needed. Here, there is no question but that this has already occurred since, as noted above, the City's roadway plan lists Old Mill Road as a "residential collector" planned roadway and Milestone agreed to dedicate to the City the right of way for the entire extension of Old Mill Road at issue.[8]

---

[8] I CR 198, Development Agreement, ¶ 2; I CR 210, Exhibit C.

8

The City next relies on § 16.002.005(d) of the right of way dedication ordinance, which states that in addition to the dedication of right of way, "the City may require the construction of a roadway improvement or may assess a fee instead of requiring construction of a roadway improvement …." Consistent with the subdivision ordinance provisions noted above, this simply gives the City the option to require *either* construction of the roadway improvement *or* a fee in lieu of construction. It does not provide the City with any discretion to dispense with both the construction and a fee to cover the cost of construction. In other words, to accomplish the orderly development of the City through its subdivisions, roadway improvements must either be constructed or paid for to ensure that the roadways connect the dots, as it were, from one subdivision to the next. Orderly development cannot occur if a city allows a favored developer like Milestone to decide where and when to build main connecting roadways or to dispense with such roads altogether.

In addition, if Ordinance § 16.002.005(d) can somehow be construed to allow the City discretion to waive *both* the build *and* the pay requirements for subdivision improvements, that action could only be carried out by the Planning Commission, to whom the City delegated sole and exclusive authority to grant variances. If the City Council purported to do that, it would exceed its authority, rendering that action void, as discussed below.

9

**D. Declaratory relief against the individual City Council members is appropriate.**

In its pleading, Becky seeks a declaration under the Uniform Declaratory Judgment Act ("UDJA") that the Development Agreement between the City and Milestone is void as an *ultra vires* act of the City Council.[9] "Private parties may Seek declaratory relief against state officials who allegedly act without legal or statutory authority." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). With respect to the individual City Council members, declaratory relief that their actions were *ultra vires* and therefore void is an appropriate use of the UDJA because it complements and provides a remedy for a claim—*ultra vires* conduct—for which immunity is already waived. *Id*.; *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

This is not a case where a plaintiff is attempting to improperly use the UDJA to obtain monetary relief against a governmental entity or to otherwise control state action that is within the actor's discretion. *See, e.g., Heinrich*, 284 S.W.3d at 372. This is also not a case where a plaintiff is merely complaining that the action of governmental officials was contrary to a statute or ordinance, thus rendering that action *voidable*. In this respect, the case is distinguishable from *Texas Logos, LP v. TxDOT*, 241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.), a case cited by the City.

---

[9] I CR 192.

In *Texas Logos*, this court held that the plaintiff's complaint that a state agency had not followed its proper bidding procedures was an improper suit to control state action. Aside from the fact that the plaintiff's claims against the individual state official were not dismissed,[10] the critical distinction between this case and *Texas Logos* is that here, Becky's claims, if proven on the merits, would render the City Council's actions void *ab initio* since they were undertaken without authority to act. *See Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 438 (Tex. 1991) (action by a municipality that exceeds its legislatively delegated authority is void). In contrast, the claims in *Texas Logos*, if true, would merely render the action *voidable*:

> We disagree with Texas Logos that the statutory violations it alleges would, if proven, render the logo sign contract void; i.e., a nullity. … This statutory scheme contemplates that while contracts executed in violation of the Act's requirements might be subject to invalidation by the agency or other statutory remedies, they would not be rendered a legal nullity on that basis.

*Texas Logos*, 241 S.W.3d at 120-21.

A recent decision pinpoints this distinction. In *Satterfield & Pontikes Constr., Inc. v. Tex. S. Univ.*, 2015 WL 4760209 (Tex. App.—Houston [1st Dist.] August 13, 2015, pet. filed), the court followed *Texas Logos* because the plaintiff in that case, as in *Texas Logos*, was not seeking "to declare an agency order void as unauthorized by law," but rather was seeking to nullify a "once-binding contractual

---

[10] *Texas Logos*, 241 S.W.3d at 109.

11

obligation." *Id.* at \*5. Here the Development Agreement, to the extent it granted Milestone a special privilege, exemption, or variance from the City's subdivision ordinance requirements, was void as unauthorized by law, and therefore a legal nullity that was never a "once-binding" contract. Becky does not seek to void a merely *voidable* contract, but rather to have the courts recognize that portions of the contract are void by law because the City Council had no legal authority to enter into those terms, having delegated the sole authority to grant exemptions or variances to the Planning Commission. The fact that the City Council memorialized this unauthorized action in a contract does not defeat Becky's ability to challenge its authority to take that action.

## II. The UDJA waives the City's immunity under these circumstances.

Becky acknowledges recent cases holding that the Uniform Declaratory Judgment Act ("UDJA") waives immunity only for a claim that a statute or ordinance is invalid, and does not waive immunity for claims seeking a declaration of the claimant's rights or an interpretation of an ordinance. *See, e.g., City of McKinney v. Hank's Restaurant Group, L.P.*, 412 S.W.3d 102, 111-112 (Tex. App.—Dallas 2013, no pet.) (citing *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618 (Tex. 2011), and discussing the evolving law on the issue). This case, however, is distinguishable since it couples a proper *ultra vires* claim against individual City Council members, who purported to act on behalf of the City, with

12

a suit for a declaration of Becky's rights under the applicable statutes and ordinances. As noted above, the courts will need to construe the ordinances at issue in order to analyze Becky's *ultra vires* claim. *Little Nell Apts.*, 424 S.W.3d at 647.

In any event, even if the City is immune, the City Council members are not. Given that declaratory relief is available against the individual defendants, that construction and interpretation of the City's ordinances is a necessary part of the suit, and that the ultimate relief sought would void a portion of a contract entered into by the City, it is somewhat surprising that the City seeks to abandon the individual defendants by hiding behind its own immunity. In holding that *ultra vires* actions can only be brought against individual government officials, the court in *Heinrich* noted:

> …the suit is, for all practical purposes, against the state. *See Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents provided, of course, the public entity received notice and an opportunity to respond."); T*ex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007) ("It is fundamental that a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent'.") (quoting *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

Therefore, a declaratory judgment against the City Council members will, as a practical matter, essentially be a declaratory judgment against the City in any event.

## III. Becky has standing to assert its claims.

The City makes the same standing argument, at least in its heading, as Milestone's failed argument below—that Becky has no standing because it was not a party to the Development Agreement.[11] Milestone challenged Becky's standing on that precise ground, and the trial court denied Milestone's challenge.[12] Becky, however, has never asserted that it has standing by virtue of any third party beneficiary status regarding the Agreement. Instead, Becky has suffered and will continue to suffer particularized injury because of the City's unauthorized action.

The City cites *Save Our Springs [SOS] Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871 (Tex. App.—Austin 2010, pet. denied), and states that this court "held that because neither SOS nor its member had an interest in the properties that were the *subject of* the development agreements, SOS lacked standing."[13] This court did not so hold. Instead, the court held that SOS lacked standing because neither it nor its members had a "property interest in Barton Springs (the land alleged to be polluted [i.e. *affected*]…) [or] property rights otherwise *affected by* Barton Springs' alleged pollution." *SOS*, 304 S.W.3d at 880 (emphasis added).

---

[11] The City's Br. at 20.

[12] I CR 72-73; Supp. CR 6. Becky again points out that the trial court refused to state its grounds for granting the City's plea to the jurisdiction, but implicit in its ruling—because it also denied Milestone's jurisdictional challenges—is that it did *not* base it on lack of standing, mootness, or lack of ripeness.

[13] The City's Br. at 21 (emphasis added).

Contrary to the City's suggestion, a plaintiff is not required to hold an interest in the property that is the *subject* of the challenged action or agreement. The plaintiff need only hold an interest in property that is *affected* by the challenged action or agreement. This court in *SOS* also noted that the plaintiff asserted only harm to its "environmental, scientific, and recreational interests generally," which are interests the law does not protect to the same extent as economic interests. *See SOS*, 304 S.W.3d at 879-80 (and cases cited therein). But even with only environmental harm, the court recognized that such harm might give a plaintiff standing if the plaintiff "own[s] property affected by the defendant's actions." *Id.* at 879 (citing *Lake Medina Cons. Soc. v. Tex. Nat. Res. Cons. Comm'n*, 980 S.W.2d 511, 513-15 (Tex. App.—Austin 1998, pet, denied)). Here, Becky has asserted economic harm to real property that is directly affected by the challenged action, and it therefore has standing.

Similarly, the other case cited by the City, *Schecter v. Wildwood Developers, LLC*, 214 S.W.3d 117 (Tex. App.—El Paso, no pet.), does not support its claim of no standing. In *Schecter*, the plaintiff asserted a claim that the city planning commission's approval of a subdivision plat violated an ordinance, but that claim was dismissed because the development had progressed during the pendency of the case so as to render that claim moot. *Schecter*, 214 S.W.3d at 120. The court did *not* hold that the plaintiff had no standing to assert the claim based on violation of

an ordinance. The plaintiff's remaining challenges to the approval of the subdivision plat were based on allegations that the approval violated the City's design criteria (a matter of discretion) and that the approval was based on the developer's fraudulent and false statements. There was no allegation that would render the approval void as an unauthorized act. The court correctly held that neither of these claims was based on the plaintiff's legal relations under a contract or ordinance, and that declaratory relief was unavailable. *Schecter*, 214 S.W.3d at 122.

Here, Becky has standing because it is "personally aggrieved," and its alleged injury is "concrete and particularized, actual or imminent, not hypothetical." *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-05 (Tex. 2008). "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

Becky has alleged improper and unauthorized action by the City and Milestone that directly and adversely affects Becky's real property. Becky's tract of land abuts Milestone's tract of land that is the subject of the Development Agreement. The Agreement purports to waive or exempt Milestone from certain otherwise binding requirements of the City's Subdivision Ordinances, including

16

the obligation to construct subdivision infrastructure and improvements such as roadways and utilities within a year from plat approval. The City's planned but unbuilt extension of Old Mill Road runs through Milestone's tract to Becky's tract, and would provide the only access to Becky's tract from South Lakeline Boulevard. Becky has alleged both a concrete injury—immediate devaluation of its property—and a continuing and increasing harm as the Agreement remains in place, tying up the property without requiring timely construction of the proper infrastructure and leaving Becky's property landlocked. Indeed, since suit was filed, the one-year deadline under the Subdivision Ordinances has long since come and gone. Without the unauthorized Agreement, Milestone would have been required to have completed construction of the subdivision improvements by September 17, 2014, or its plat approval would have expired. The existence of the Agreement prevented this from happening, harming Becky.

Finally, the City relies on *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919 (Tex. App.—Austin 2010, no pet.), but this reliance is misplaced. As pointed out in Becky's initial brief, the ordinance in that case caused plaintiffs actual and present injury by rendering valueless ice chests that plaintiff had purchased for renting out to customers, and by causing them to incur additional expense to comply with the ordinance. *Id.* A similar harm to Becky's property has occurred in this case since the waiver or variance granted by the City

17

to Milestone has denied and delayed Becky's ability to effectively use and develop its property. Becky has alleged such a particularized injury in fact, which is all that is required. *South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007). Becky does not assert standing as a mere taxpayer or a disgruntled citizen. Instead, Becky asserts standing because its real property is directly and adversely affected by the City Council's unauthorized action. Becky, therefore, has standing.

## IV. Becky's claims are ripe.

For its ripeness argument, the City relies on two things: the case of *City of El Paso v. Maddox*, 276 S.W.3d 66 (Tex. App.—El Paso 2008, pet, denied), and the suggestion that Becky has not submitted a completed plat application for the City to review. The case is distinguishable and the suggestion is not true. On October 24, 2014, while this case was pending below, Becky submitted its application for a preliminary plan and final plat. Although Becky was not required to have filed such an application in order for its claims to be ripe (since there was a justiciable controversy even without the application), the application puts that issue to rest.

As for *City of El Paso v. Maddox*, the plaintiff in that case asserted a claim for monetary relief against the city for an unconstitutional taking; there was no allegation that the city's actions were unauthorized or *ultra vires*. Another distinguishing factor is that the city in *Maddox* had amended its applicable subdivision ordinance "to eliminate the requirement which would have required

18

that [the developer] provide access to the [plaintiff's] Property." *Maddox*, 276 S.W.3d at 70. There is no such amendment to the City's ordinances here.

In analyzing the plaintiff's takings claim, the court in *Maddox* noted that for "a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulation to the property at issue," and that a "final decision usually requires both a rejected development plan and the denial of a variance from the controlling regulation." *Id.* at 71-72. The lack of a "final decision" as it relates to the ripeness of a *regulatory takings claim* has no relevance to Becky's claims here, which seek declaratory relief—a remedy particularly well-suited for determining the rights and obligations of the parties when there is an existing controversy over those rights and obligations.

The City next argues that Becky's claims are not ripe because Becky filed an application for a plat on *its* property and the City has not yet taken final action on that application. The City's focus on *Becky's* application for a plat, however, is misplaced. At issue in this case is *Milestone's* application for a plat in 2013 and the City Council's unauthorized grant of waivers or variances of its subdivision ordinance requirements, without which either the road would be built by now or Milestone's plat would be vacated. Becky has already been and continues to be harmed by this *ultra vires* conduct even if it had never filed an application for its own plat.

19

Becky's own application simply brings into sharper focus the question of *who* may ultimately be responsible for paying for the road, but the issues raised by Becky's application, including whether Becky may be required to pay for the road, will be addressed in an administrative action before the City, not the courts. It may become part of this case at a later date, when the administrative remedies are exhausted. That is why Becky deleted its initial request, contained in its original petition, for a declaration that Becky should not have to pay for the road. That remedy is premature, and it is not currently an issue in this case.

What is ripe, however, is the immediate effect the Agreement has had and continues to have on Becky's property. The existence of the Agreement, with its *ultra vires* waivers of the City's subdivision ordinance requirements, has landlocked and continues to landlock Becky's real property and to hold it in limbo. Without the *ultra vires* Agreement, the road would have been built by now or Milestone's plat would have expired. There is good reason why the City's own ordinances contain strict time limitations for development after plat approval— subdivision development and the construction of improvements within those subdivisions must be completed in an orderly and timely fashion. It is the limbo resulting from the *ultra vires* Agreement that has harmed and devalued Becky's property and continues to do so. No administrative action can remedy this harm; certainly no city department can issue the declaratory relief Becky requests.

## V. Becky's claims are not moot.

The City's mootness argument is without substance. The City bluntly states that "because the City Council validly approved the Agreement, any claim by Becky that the City Council acted without authority is moot." The City, however, does not explain how the City can "validly" approve an agreement that it had no authority to make, nor does it explain how this would render Becky's claim moot. A hint to the substance of its argument comes from the City's reliance on *Save Our Springs Alliance, Inc. [SOS] v. City of Austin*, 149 S.W.3d 674 (Tex. App.—Austin 2004, no pet.), where the city's subsequent action rendered the plaintiff's claim moot. But that case involves very different facts.

In *SOS v. City of Austin*, the plaintiff challenged a development agreement as being contrary to an ordinance. While the case was pending, the city "amended the Ordinance according to the terms of the development agreement. This amendment was a legislative act by the City." *SOS v. City of Austin*, 149 S.W.3d at 681. In other words, the city legislatively amended its ordinance, which the city had the right and authority to do, so that the development agreement no longer conflicted with the ordinance. This mooted the plaintiff's argument that there was a conflict since the conflict no longer existed.

No such facts are present here. The City has *not* amended its Subdivision Ordinances, and certainly not in a manner that would resolve the conflict between

21

the Agreement and the requirements of the Ordinances. Doing so, of course, would require public notice and public debate at open meetings. *See* TEX. LOCAL GOV'T CODE § 212.002 ("*After a public hearing* on the matter, the governing body of a municipality may adopt rules governing plats and subdivisions;" emphasis added)[14]; City of Cedar Park Charter § 3.13 ("No ordinances except emergency ordinances shall be finally passed until they have been read on two (2) separate days not less than 72 hours apart.").[15]

In its plea to the jurisdiction below, the City's suggested that the Agreement "has the *effect* of amending the city's subdivision regulations,"[16] but that cannot be the case. As this court recognized in *SOS v. City of Austin*, cities may certainly amend their own ordinances. *SOS v. City of Austin*, 149 S.W.3d at 681. But that case does not support the leap that a city may avoid its public notice and open meeting requirements by "effectively" amending its ordinances through private contracts. The Supreme Court has recognized that a city may effectively contract with private parties by properly enacting or amending an ordinance. *See City of Houston v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011). But no court has held that a city may effectively "amend" its existing ordinances by entering into a contract.

---

[14] Failure to comply with this provision would also be in violation of the Open Meetings Act, TEX. GOV'T CODE Chapter 551.

[15] http://www.ci.cedar-park.tx.us/modules/showdocument.aspx?documentid=3818 at p. 7.

[16] I Cr 44 (emphasis added).

22

## CONCLUSION

Becky requests that this Court reverse the judgment below and remand the case to the trial court. Becky requests such other relief to which it may be entitled.

Respectfully submitted,

HUSCH BLACKWELL, L.L.P

BY: */s/ Elizabeth G. Bloch*
     ELIZABETH G. BLOCH
     Texas Bar No. 02495500
     Heidi.bloch@huschblackwell.com
     111 Congress Avenue, Suite 1400
     Austin, Texas 78701
     (512) 472-5456
     (512) 479-1101 (facsimile)

     Leonard B. Smith
     Texas Bar No. 18643100
     lsmith@leonardsmithlaw.com
     P.O. Box 684633
     Austin, Texas 78768
     (512) 914-3732
     (512) 532-6446 (facsimile)

     ATTORNEYS FOR BECKY, LTD.

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document contains 5,577 words, according to the word count of the computer program used to prepare it, in compliance with Rule 9.4(i)(2).

*/s/ Elizabeth G. Bloch*
Elizabeth G. Bloch

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been served upon the following counsel of record via electronic filing and/or facsimile on the 30th day of September, 2015:

Cobby Caputo
ccaputo@bickerstaff.com
Bradley B. Young
byoung@bickerstaff.com
Bickerstaff Heath Delgado Acosta LLP
3711 South MoPac Expressway
Building One, Suite 300
Austin, Texas 78746

/S/ ELIZABETH G. BLOCH
Elizabeth G. Bloch



city of cedar park
roadway plan

CEDAR PARK

1:24,000